1 | Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
2 | Drew A. Robertson (SBN: 266317)
darobertson@winston.com
3 | WINSTON & STRAWN LLP
333 S. Grand Avenue
4 | Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
5 | Facsimile: (213) 615-1750

6 | Attorneys for Defendants
ABBVIE INC.,
7 | ABBOTT LABORATORIES, INC.,
and MCKESSON CORPORATION

8



9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SANTA ANA DIVISION**

12

13 | EVELYN CALVILLO, | Case No.
| **SACV14-01331 JLS (DFMx)**
14 | Plaintiff, | (Orange County Superior Court Case
| No. 30-2014-00732840-CU-PO-CJC)
15 | v.
| **NOTICE OF REMOVAL**
16 | ABBVIE INC.; ABBOTT
LABORATORIES, INC.; MCKESSON
17 | CORPORATION; and DOES 1-100,

18 | Defendants.

19

20 | PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, and

21 | 1446, Defendants AbbVie Inc., Abbott Laboratories, Inc., and McKesson Corporation

22 | (hereinafter "Defendants") hereby remove this civil action from the Superior Court of

23 | California, Orange County, where it is currently pending as Case No. 30-2014-

24 | 00732840-CU-PO-CJC, to the United States District Court for the Central District of

25 | California.

26 | 1. This is a product liability action for injuries allegedly sustained as a result

27 | of the use of AndroGel testosterone replacement therapy. On June 6, 2014, the

28 | Judicial Panel on Multidistrict Litigation entered an order creating a multidistrict

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

COPY

litigation ("MDL") proceeding for similar federal cases. Those cases were all centralized in the United States District Court for the Northern District of Illinois. *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, No. 14-cv-1748 (N.D. Ill.) (Kennelly, J.). As of this date more than 238 similar cases are or soon will be part of the MDL proceeding.

2.     Plaintiff commenced this action on July 7, 2014 by filing a Complaint in the Superior Court of California for the County of Orange. Plaintiff served a copy of the summons and Complaint on McKesson Corporation on July 21, Abbott Laboratories, Inc. on July 24, and AbbVie Inc. on July 28.

3.     The Complaint alleges that Plaintiff's husband died as a result of using AndroGel. (Ex. A, Compl. ¶¶ 3, 57.) The Complaint alleges nothing about Decedent's manner of death and nothing about his AndroGel use.

4.     Plaintiff asserts claims for (1) strict liability; (2) negligence; (3) fraud; (4) fraud: concealment, suppression or omission of material facts; (5) negligent misrepresentation; (6) breach of implied warranty; (7) breach of express warranty; (8) violation of California Consumer Legal Remedies Act; (9) violation of Business & Professions Code § 17200; (10) loss of consortium; (11) wrongful death; and (12) survival action. Plaintiff seeks to recover special and general damages, medical expenses, past and future, punitive damages, pre- and post-judgment interest, attorneys' fees, expenses, and costs, and other relief. Plaintiff also seeks an injunction prohibiting Defendants from engaging in conduct which violates the California Consumer Legal Remedies Act and the California Business & Professions Code § 17200 *et seq.*

**I.     This Court has original jurisdiction over this action.**

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332, which confers original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States."

NOTICE OF REMOVAL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

### A.     A sufficient amount is in controversy.

6.     The amount in controversy exceeds $75,000, exclusive of interest and costs.[1] Plaintiff seeks to recover compensatory damages, including but not limited to loss of consortium, other non-economic damages, past and future medical expenses, and other economic damages, attorneys' fees, expenses, and further relief. The Complaint does not demand a specific amount. Cal. Code Civ. Proc. § 425.10 ("the amount demanded shall not be stated" for an action "brought to recover actual or punitive damages for personal injury or wrongful death").

7.     When a complaint does not demand a specific amount, the court must determine whether it is "facially apparent from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Auto. Ins.*, 116 F.3d 373, 377 (9th Cir. 1997); *see also Titans Trading v. JTS Express*, 2009 WL 537515, at *5 (C.D. Cal.).

8.     Where, as here, a plaintiff seeks recovery for wrongful death, courts have readily found the amount in controversy requirement is met. *Kammerdiener v. Ford Motor*, 2010 WL 682297, at *2 (C.D. Cal.) (denying motion for remand: "[t]hat Plaintiffs are seeking recovery for wrongful death is sufficient to establish that the amount in controversy exceeds $75,000 on the face of the Complaint."); *De Aguilar v. Boeing*, 11 F.3d 55, 57 (5th Cir. 1993) (amount in controversy is facially apparent because the plaintiff alleged claims for wrongful death).

9.     In addition, Plaintiff seeks punitive damages, which must be included in the amount in controversy. *Gibson v. Chrysler*, 261 F.3d 927, 945 (9th Cir. 2001); *Romo v. FFG Ins.*, 397 F. Supp. 2d 1237, 1240 (C.D. Cal. 2005). Including punitive damages in the amount in controversy here allows no doubt that the jurisdictional requirement is met.

10.     There are 238 MDL cases that, just like this one, allege injuries resulting

---

[1] Defendants do not concede that Plaintiff is in fact entitled to recover any damages. *See Kelderman v. Remington Arms*, 734 F. Supp. 1527, 1528 (S.D. Iowa 1990) (rejecting plaintiff's attempt to "place [a] defendant in the awkward position of embracing a concession on the important issue of damages" to establish jurisdiction).

1   from the use of AndroGel or other testosterone replacement therapies. Most or all of

2   them are in federal court on the basis of diversity jurisdiction, having satisfied the

3   amount in controversy.

4   **B.     The parties are diverse.**

5   11.     Complete diversity of citizenship exists between Plaintiff and properly

6   named Defendants.

7   12.     Plaintiff, suing for Decedent's alleged injuries (Compl. ¶ 2), is "deemed

8   to be a citizen of the same State as the decedent." 28 U.S.C. § 1332(c)(2). Decedent

9   and Plaintiff are both citizens of California. (Compl. ¶¶ 3, 10, 20, 56.) Neither

10  Decedent nor Plaintiff is a citizen of Illinois or Delaware.

11  13.     At the time this lawsuit was filed and at all times since, Defendant

12  AbbVie Inc. is a Delaware corporation with its principal place of business in Illinois.

13  14.     At the time this lawsuit was filed and at all times since, Defendant

14  Abbott Laboratories, Inc. is a Delaware corporation with its principal place of

15  business in Illinois.[2]

16  15.     The complaint also names as Defendants "Does 1-100." Under 28 U.S.C.

17  § 1441(b), "the citizenship of defendants sued under fictitious names shall be

18  disregarded." Thus, the citizenship of the "Doe" Defendants is not considered when

19  assessing this Court's jurisdiction. *Olive v. Gen. Nutrition Ctrs.*, 2012 WL 2006389, at

20  *1 (C.D. Cal.); *Marsikyan v. Porsche Cars*, 2012 WL 280585, at *2 (C.D. Cal.).

21  16.     Defendant McKesson Corporation is a Delaware corporation with its

22  principal place of business in California. McKesson is not diverse from Plaintiff.

23  17.     McKesson's presence in this case does not defeat jurisdiction because

24  McKesson was fraudulently joined. The fraudulent joinder doctrine reflects "a

25  Congressional intent to prevent the fraudulent joinder of forum defendants in order to

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

26

27  [2] Abbott Laboratories, the publicly traded company, appears to have been misidentified

28  in the complaint as Abbott Laboratories, Inc., a different company that is a subsidiary of Abbott Laboratories. The misidentification does not change the fact that the parties are diverse, because Abbott Laboratories is an Illinois corporation with its principal place of business in Illinois.

NOTICE OF REMOVAL

avoid removal." *Khashan v. Ghasemi*, 2010 WL 1444884, at *1 (C.D. Cal.); *see also Kolker v. VNUS Med. Tech.*, 2010 WL 3059220, at *4 (N.D. Cal.). Under that doctrine, a court disregards the citizenship of a non-diverse defendant if the plaintiff cannot establish a cause of action against it. *Mercardo v. Allstate Ins.*, 340 F.3d 824, 826 (9th Cir. 2003); *Taylor v. Jeppesen DataPlan*, 2010 WL 3790728, at *2 (N.D. Cal.).

18.    Plaintiff fails to state a cause of action against McKesson. This is a product liability action relating to injuries allegedly arising from AbbVie and Abbott's research, development, marketing, and sales of AndroGel. The Complaint's 124 paragraphs focus almost exclusively on their knowledge and conduct in designing, testing, formulating, manufacturing, selling, labeling, marketing, and distributing AndroGel. (Compl. ¶¶ 21-51, 62-124.)

19.    In the entire Complaint, McKesson is mentioned in only a few paragraphs. McKesson is alleged—purely "[o]n information and belief"—to have (a) printed and distributed unspecified AndroGel materials and to have "purported to warn or inform users regarding" AndroGel's risks, and (b) distributed AndroGel to Decedent's pharmacy. (*Id.* ¶¶ 10, 56.) That is all the Complaint alleges about McKesson.

20.    In a similar case, a federal court concluded that McKesson was fraudulently joined because plaintiff only alleged that "McKesson is a major distributor of the drug." *Aronis v. Merck*, 2005 WL 5518485, at *1 (E.D. Cal.). The court held that this allegation, "even though taken as true at this stage, is not enough to support a claim against McKesson. To state a claim against a defendant, a plaintiff must allege a *causal connection* between the injury and the conduct of that defendant …. Here, plaintiff does not allege that McKesson in any way contributed to her injuries, only that McKesson is a distributor." *Id.*[3] Likewise here, Plaintiffs do not

---

[3] *See also Fisher v. Paul Revere Ins.*, 55 F. App'x 412, 414 (9th Cir. 2002) (defendant was fraudulently joined because plaintiff did not specifically allege facts that would support any of the elements of plaintiff's claim); *Brown v. Allstate Ins.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (defendants were fraudulently joined because "no

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

assert any facts showing that McKesson's own conduct caused any injury.

21.     Another court, addressing a similar complaint naming McKesson, declined to rule on plaintiff's motion to remand. *Camara v. Bayer*, 2010 WL 902780 (N.D. Cal.). The court held that the complaint failed "to clearly explain the role of McKesson in the injury of these specific plaintiffs and leaves a suspicion that McKesson could have been added to defeat diversity removal." *Id.* at *3.

22.     The Complaint in the present case also contains allegations made against all "Defendants" generically. But rather than help Plaintiff state a cause of action, undifferentiated allegations about "Defendants" help to demonstrate fraudulent joinder.[4]

23.     In all of the 198 state and federal AndroGel cases pending against AbbVie and Abbott, only two other cases currently name McKesson (or any other AndroGel distributor) as a defendant. *Cove v. AbbVie*, Case No. 14-cv-05659 (N.D. Ill.); *Schuur v. AbbVie*, Case No. 14-cv-05568 (N.D. Ill.). Those two cases are both part of the federal MDL, where responsive pleadings have been stayed. Defendants thus have not yet had an opportunity to move to dismiss McKesson from those cases.

24.     One other case that named McKesson as a defendant along with AbbVie and Abbott was initially filed in the Superior Court of California, County of San Francisco. AbbVie and Abbott removed that case to the Northern District of

material allegations" were made against them); *Mass. Eye & Ear Infirmary v. Eugene B. Casey Found.*, 417 F. Supp. 2d 192, 194 (D. Mass. 2006) (defendant was fraudulently joined because it was only mentioned in two of the paragraphs in the complaint and there was no allegation about how defendant caused plaintiff any harm); *In re PPA*, MDL No. 1407, 2002 WL 34418423, at *5 (W.D. Wash.) (allegations directed toward "defendants" or "all defendants" insufficient); *Lyons v. Am. Tobacco*, 1997 WL 809677, at *5 (S.D. Ala.) (holding there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of plaintiff "to set forth any specific factual allegations" against them).

[4] *See, e.g.*, *Shah v. Wyeth Pharms.*, 2005 WL 6731641, at *3 (C.D. Cal.); *Gomes v. Michaels Stores*, 2006 WL 3079024, at *2-3 (E.D. Cal.); *Beavers v. DePuy Orthopaedics*, 2012 WL 1945603, at *5 (N.D. Ohio); *Oshima v. Kia Motors*, 2012 WL 15578397, at *5-7 (D. Colo.); *Cranston v. Mariner Healthcare Mgmt.*, 2003 WL 21517999, at *3-4 (N.D. Miss.); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001); *Salisbury v. Purdue Pharm.*, 166 F. Supp. 2d 546, 550 (E.D. Ky.); *Addison v. Allstate Ins.*, 58 F. Supp. 2d 729, 732-33 (S.D. Miss.).

NOTICE OF REMOVAL

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

California due to the fraudulent joinder of McKesson. *Montenegro v. AbbVie*, Case No. 3:14-cv-02797, Notice of Removal, ECF No. 1 (N.D. Cal.). The deadline for any remand motion in that case has passed. The case is now part of the federal MDL.

26. 25.    McKesson was also named as a defendant in one other testosterone replacement therapy case, this one not involving AbbVie or Abbott Laboratories, Inc. That case was originally filed in the Superior Court for the County of San Francisco, but Eli Lilly removed it to federal court due to the fraudulent joinder of McKesson. *Nagel v. Eli Lilly*, Case No. 3:14-cv-02179, Notice of Removal, ECF No. 1 (N.D. Cal.). The case is now part of the federal MDL.

**C.    All other requirements for removal are satisfied.**

26.    All properly joined and served defendants join in this removal. 28 U.S.C. § 1446(b)(2)(A).

27.    This Notice of Removal is timely filed. Each defendant has "30 days … after receipt … of the initial pleading … to file a notice of removal." 28 U.S.C. § 1446(b)(2)(B). Defendant McKesson was served on July 21, 2014. This Notice of Removal is filed within 30 days of that date.

28.    This Court is a proper venue for this action, pursuant to 28 U.S.C. § 1441(a). The United States District Court for the Central District of California embraces the County of Orange, where the state court action is now pending. 28 U.S.C. § 84(a).

29.    No previous application has been made for the relief requested herein.

30.    Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendants, including the summons and Complaint, is attached hereto as Exhibit A.

31.    Pursuant to 28 U.S.C. § 1446(d), a Notice of Filing Notice of Removal and the Notice of Removal will be served upon counsel for Plaintiff and will be filed with the clerk of the Superior Court for the County of Orange.

32.    If any question arises with regard to the removal of this action,

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  Defendants respectfully request the opportunity to be heard on it.

2

3      WHEREFORE, Defendants respectfully request removal of this action from the

4  Superior Court of the County of Orange, in the State of California, bearing Case No.

5  30-2014-00732840-CU-PO-CJC, to this Court.

6

7  Dated: August 20, 2014                    WINSTON & STRAWN LLP

8

9                                     By: _Drew A. Robertsa/pw_

10                                        Erin R. Ranahan
                                          Drew A. Robertson
11                                        WINSTON & STRAWN LLP
                                          333 S. Grand Avenue
12                                        Los Angeles, CA 90071
                                          Telephone: (213) 615-1700
13                                        Fax: (213) 615-1750
                                          eranahan@winston.com
14                                        darobertson@winston.com

15                                        Attorneys for Defendants
                                          ABBVIE INC., ABBOTT
16                                        LABORATORIES, INC., and
                                          MCKESSON CORPORATION
17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

8

# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

07/07/2014 at 04:44:37 PM
Clerk of the Superior Court
By Robert Renison, Deputy Clerk

1  Stewart R. Albertson, SBN 230841
2  stewart@aldavlaw.com
3  Heather G. Cote, SBN 293368
4  hgreen@aldavlaw.com
   Albertson & Davidson, LLP
5  3491 Concours, Suite 201
6  Ontario, California 91764
7  (909) 466-1711
8  (909) 354-3460 fax

9  Attorneys for Plaintiff
10

11

12

13              **Superior Court of the State of California**

14                  **For the County of Orange**

15

16  Evelyn Calvillo,                    Case No.: 30-2014-00732840-CU-PO-CJC
17
18          Plaintiff,                  Judge William Claster
                                         Complaint for Wrongful Death and
19                                       Demand for Jury Trial
20
21          v.
22
23
24  AbbVie, Inc.; Abbott Laboratories, Inc.;
25  McKesson Corporation; and
    Does 1-100,
26
27          Defendants.
28
29

30

31

32

33

34

35

36

37

Complaint for Wrongful Death and Demand for Jury Trial

1  Plaintiff Evelyn Calvillo ("Plaintiff") alleges as follows:

2  **Introduction**

3  1.      This case involves the prescription drug AndroGel®
4  ("Androgel"), which, on information and belief, is manufactured, sold,
5  distributed, promoted, labeled, marketed, and advertised by Defendants,
6  and each of them.

7  2.      Androgel is used as a testosterone replacement therapy.
8  Defendants negligently and intentionally misrepresented that Androgel was
9  safe and effective, when in fact it was causing and contributing to serious
10  cardiovascular events, including, but not limited to, heart attacks, strokes,
11  pulmonary embolism, and deep vein thrombosis. Plaintiff's husband,
12  Samuel Calvillo ("Decedent"), used Androgel and died as a result.

13  **Parties and Jurisdiction**

14  3.      Plaintiff is the surviving spouse of Decedent, and is successor
15  in interest to causes of action of decedent. Plaintiff is also a resident of
16  Orange County. As an heir and successor in interest to Decedent, she is
17  entitled to, and hereby does, bring a wrongful death action.

18  4.      Defendant AbbVie, Inc. is a Delaware corporation with its
19  principal place of business at 1 North Waukegan Road, North Chicago,
20  Illinois 60064. At all times relevant, Defendant AbbVie, Inc., a
21  pharmaceutical company involved in researching, manufacturing, selling,
22  merchandising, advertising, promoting, labeling, analyzing, testing
23  distributing and marketing of pharmaceuticals for distribution, sale, and use
24  by the general public, including Androgel.

25  5.      At all times relevant, AbbVie, Inc. was and is authorized to
26  do business in the State of California and was and is engaged in substantial
27  commerce and business activity in the state of California and Orange
28  County. At all times relevant, Defendant AbbVie, Inc. was engaged in the
29  sale and marketing of pharmaceutical products including Androgel in the
30  State of California and Orange County. On information and belief,
31  Defendant AbbVie, Inc. maintains research facilities in the State of
32  California.

33  6.      Defendant AbbVie, Inc. includes any and all parents,
34  subsidiaries, affiliates, divisions, franchises, partners, joint venturers and
35  organizational units of any kind, their predecessors, successors and assigns
36  and their present officers, directors, employees, agents, representatives and
37  other persons acting on their behalf.

2

7.  Defendant Abbott Laboratories, Inc. is an Illinois corporation with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064. At all times relevant, Defendant Abbott Laboratories, Inc. a pharmaceutical company involved in researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing distributing and marketing of pharmaceuticals for distribution, sale, and use by the general public, including Androgel.

8.  At all times relevant, Abbott Laboratories, Inc. was and is authorized to do business in the State of California and was and is engaged in substantial commerce and business activity in the state of California and Orange County. At all times relevant, Abbott Laboratories, Inc. was engaged in the sale and marketing of pharmaceutical products including Androgel in the State of California and Orange County. On information and belief, Abbott Laboratories, Inc. maintains research facilities in the State of California.

9.  Defendant Abbott Laboratories, Inc. includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons acting on their behalf.

10.  Defendant McKesson is, and at all times material to this action was, a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business at One Post Street, San Francisco, California 94104. At all times relevant, Defendant McKesson was involved in distribution, sales and marketing of pharmaceutical products including Androgel in the United States of America, including the State of California and Orange County. On information and belief, as part of its involvement in the marketing, distribution and promotion of Androgel, Defendant McKesson printed promotional materials and inserts for Androgel and provided them to physicians in California, including Decedent's physician. On information and belief, Defendant McKesson labeled, described, advertised, promoted and purported to warn or inform users regarding the risks pertaining to Androgel.

11.  Defendant McKesson includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns

1   and their present officers, directors, employees, agents, representatives and

2   other persons acting on their behalf.

3        12.   Defendants AbbVie, Inc., Abbott Laboratories, Inc., and

4   McKesson have transacted and conducted business with the State of

5   California, have derived substantial revenue from goods and products used

6   in the State of California, have derived substantial revenue from interstate

7   commerce, and expected, or should have expected, their acts to have

8   consequences within the State of California. This Court has personal

9   jurisdiction over these Defendants.

10       13.   The true names and capacities, whether individual, corporate,

11  associate, or otherwise, of Defendants named herein as Does 1 through 100,

12  and each of them, are unknown to Plaintiff, who therefore, sues said

13  Defendants by such fictitious names.

14       14.   Plaintiff will ask leave to amend this Complaint to state said

15  Defendants' true identities and capacities when the same has been

16  ascertained.

17       15.   Plaintiff is informed and believes and based thereon alleges

18  that each of the Defendants designated herein as "Doe" took part in and

19  participated with the Defendants in all matters referred to herein and was in

20  some manner responsible for the injuries and losses suffered by Decedent

21  and Plaintiff.

22       16.   Plaintiff is informed and believes and based thereon alleges

23  that at all times herein mentioned each of the Defendants was the agent,

24  servant and/or employee or occupied other relationships with each of the

25  other named Defendants and at all times herein mentioned acted within the

26  course and scope of said agency and/or employment and/or other

27  relationship and each other Defendant has ratified, consented to, and

28  approved the acts of its agents, employees, and representatives, and that

29  each actively participated in, aided and abetted, or assisted one another in

30  the commission of the wrongdoing alleged in this Complaint.

31                    **Jurisdiction and Venue**

32       17.   The California Superior Court has jurisdiction over this action

33  pursuant to California Constitution Article VI, Section 10, which grants the

34  Superior Court "original jurisdiction in all causes except those given by

35  statute to other trial courts." The Statutes under which this action is brought

36  do not specify any other basis for jurisdiction.

37       18.   The California Superior Court has jurisdiction over all

Complaint for Wrongful Death and Demand for Jury Trial

1   Defendants because, based on information and belief, each is a corporation
2   and/or entity and/or person organized under the laws of the State of
3   California, a foreign corporation or association authorized to do business in
4   California and registered with the California Secretary of State or that has
5   sufficient minimum contacts in California, is a citizen of California, or
6   otherwise intentionally avails itself of the California market so as to render
7   the exercise of jurisdiction over it by the California courts consistent with
8   traditional notions of fair play and substantial justice.
9         19.    Furthermore Defendants AbbVie, Inc., Abbott Laboratories,
10  Inc., and McKesson have purposefully availed themselves of the benefits
11  and the protections of the laws within the State of California. Defendant
12  McKesson has its principle place of business within the State of California.
13  Defendants AbbVie, Inc., Abbott Laboratories, Inc., and McKesson have
14  had sufficient contact such that the exercise of jurisdiction would be
15  consistent with the traditional notions of fair play and substantial justice.
16        20.    Venue is proper in this court pursuant to California Code of
17  Civil Procedure Section 395 in that Plaintiff resides within Orange County
18  and Decedent suffered an injury in Orange County.
19                        **General Allegations**
20        21.    The pharmaceutical drug at issue in this litigation is
21  Androgel, a testosterone replacement therapy.
22        22.    At all relevant times, Defendants designed, researched,
23  manufactured, tested, advertised, promoted, marketed, sold and distributed
24  Androgel as a testosterone replacement therapy.
25        23.    Unimed Pharmaceuticals, Inc. originally developed Androgel
26  and sought FDA approval in 1999. Before the drug was approved by the
27  FDA in 2000, Solvay Pharmaceuticals Inc. acquired Unimed
28  Pharmaceuticals, Inc. and, subsequently, brought Androgel to market. In
29  2010, Defendant Abbott Laboratories, Inc. acquired Solvay's
30  pharmaceutical division, which included Androgel. In 2013, Abbott
31  Laboratories, Inc. created AbbVie, Inc., a company composed of Abbott
32  Laboratories, Inc.'s former proprietary pharmaceutical business, which
33  included Androgel.
34        24.    The FDA approved Androgel for the treatment of adult males
35  who have low or no testosterone. After the FDA approval, Defendants
36  widely advertised and marketed Androgel as safe and effective testosterone
37  replacement therapy.

25. Androgel is a hydroalcoholic gel containing testosterone. It is applied to the upper arms/shoulders or abdomen. The drug enters the body through transdermal absorption.

26. Defendants participated in advertising campaigns designed to convince men that they suffered from low testosterone. Defendants participated in national disease awareness media blitzes that purported to educate male consumers about the signs of low testosterone. The national marketing campaigns consisted of television advertisements, promotional literature placed in healthcare providers' offices and distributed to potential testosterone users, and online media. Defendant Abbott Laboratories, Inc. reportedly spent approximately $80 million promoting Androgel in 2012 alone.

27. Defendants' advertisements suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone. These "symptoms" include listlessness, increased body fat, and moodiness--all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

28. Defendants' advertising campaigns included and include the unbranded website "IsItLowT.com" that purports to provide facts regarding low testosterone, diagnosis tools, and recommendations and solutions for treating the condition.

29. Defendants published a quiz on their "IsItLowT" website titled "Androgen Deficiency in Adult Males" (ADAM) or "Is it Low T?" The website encourages consumers to take the quiz to find out whether their symptoms could be caused by low testosterone levels. According to the "Is it Low T?" quiz, the symptoms of "Low T" include being "sad or grumpy," "experiencing deterioration in the ability to play sports," and "falling asleep after dinner." See, *www.isitlowt.com/do-you-have-low-t/low-t-quiz*.

30. The "Is it Low T?" quiz was developed by Dr. John Morley, Director of Endocrinology and Geriatrics at the St. Louis University School of Medicine, at the request of a Dutch pharmaceutical company Organon BioSciences and, in exchange for a $40,000 grant to his university, Dr. Morley was told to keep the survey brief and to "make it somewhat sexy." In fact, according to Natasha Singer, *Selling that New-Man Feeling,* Nov.

6

Complaint for Wrongful Death and Demand for Jury Trial

23, 2013, N.Y. Times, Dr. Morley admitted that he drafted the survey in a bathroom in less than 30 minutes, scribbling the questions on toilet paper. Dr. Morley has "no trouble calling it a crappy questionnaire," and he has stated that the survey is "not ideal" as a tool for helping to determine whether an individual's symptoms are caused by low testosterone levels.

31.    The symptoms described in the "Is it Low T?" quiz can be caused by an abundance of factors, including the natural aging process.

32.    Defendants have also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed, and that conditions associated with normal aging could be caused by low testosterone levels.

33.    Defendants' marketing campaigns have been very successful, convincing millions of men that they need testosterone replacement therapy. As a result of Defendants' "disease mongering," as termed by Dr. Adriane Fugh-Berman of Georgetown University Medical Center, the number of individuals diagnosed with Low T has increased exponentially.

34.    In 1999, when Unimed Pharmaceuticals, Inc., one of the Defendants' predecessor companies, petitioned the FDA to approve Androgel, Unimed Pharmaceuticals, Inc. claimed that hypogonadism affected approximately "one million American men." The FDA approved Androgel in 2000, by which time Unimed Pharmaceuticals, Inc. had announced that the market for Androgel was "four to five million American men." Three years later, in 2003, the market for Androgel had increased to "up to 20 million men."

35.    While running their campaigns for the awareness of low testosterone as a disease, Defendants promoted and promote their testosterone products as easy to use topical testosterone replacement therapies.

36.    Defendants convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Defendants' promises of safety and ease. Although prescription testosterone replacement therapy had been available for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies.

37.    However, these men were enticed to take dangerous medication that carries no benefit because many, if not most, of these men did not suffer from any testosterone-related condition that required medical

7

1    intervention.

2           38.    A study published in the Journal of the American Medical

3    Association ("JAMA") in August 2013 entitled "Trends in Androgen

4    Prescribing in the United States, 2001-2011" indicated that many men who

5    get testosterone prescriptions have no evidence of hypogonadism. For

6    example, one third of men prescribed testosterone had a diagnosis of

7    fatigue, and one quarter of men did not even have their testosterone levels

8    tested before they received a testosterone prescription.

9           39.    The increase in the number of patients misdiagnosed with

10    hypogonadism as a result of Defendants' advertising efforts has resulted in

11    over $1.37 billion in annual sales of Androgel. Androgel is the top selling

12    androgen drug in the United States. According to Shannon Pettypiece, *Are*

13    *Testosterone Drugs the Next Viagra?,* Bloomberg Businessweek, May 10,

14    2012, estimates indicate that sales are expected to triple in the next few

15    years, bringing in over $5 billion by the year 2017.

16                      **The Dangers of Testosterone Therapy**

17           40.    Testosterone therapies, including Androgel, are not safe

18    drugs, but products that cause life-threatening problems including blood

19    clots, strokes and heart attacks.

20           41.    There have been a number of studies suggesting that

21    testosterone in men increases the risk of serious side effects:

22                  a.   In 2010, a New England Journal of Medicine study

23                      entitled "Adverse Events Associated with Testosterone

24                      Administration" was discontinued after an exceedingly

25                      high number of men in the testosterone group suffered

26                      adverse events.

27                  b.   In November of 2013, a JAMA study entitled

28                      "Association of Testosterone Therapy with Mortality,

29                      Myocardial Infarction, and Stroke in Men with Low

30                      Testosterone Levels" indicated that testosterone therapy

31                      raised the risk of death, heart attack and stroke by about

32                      30%.

33                  c.   On January 29, 2014, a study was released in PLOS ONE

34                      entitled "Increased Risk of Non-Fatal Myocardial

35                      Infarction Following Testosterone Therapy Prescription in

36                      Men." This study indicated that testosterone increases the

37                      risk of heart attacks in men over sixty-five years old by

8

Complaint for Wrongful Death and Demand for Jury Trial

1       200% and in men younger than sixty-five with a previous

2       diagnosis of heart disease by up to 300%.

3       42.     Secondary exposure to testosterone can cause side effects in

4    others. In 2009, the FDA issued a black box warning for testosterone

5    prescriptions, advising patients of reported virilization in children who were

6    secondarily exposed to the gel. Testosterone may also cause physical

7    changes in women exposed to the drug and cause fetal damage with

8    pregnant women who come into secondary contact with testosterone.

9                **Defendants Misrepresented and Failed to**

10               **Warn of the Dangers of Androgel**

11      43.     Defendants' marketing strategy has been to aggressively

12   market and sell Androgel by misleading potential users about the

13   prevalence and symptoms of low testosterone. Defendants failed to protect

14   users from serious dangers that Defendants knew, or should have known,

15   can result from the use of Androgel.

16      44.     Defendants successfully marketed Androgel by undertaking

17   campaigns designed to create a consumer perception that low testosterone

18   is prevalent among U.S. men and that symptoms previously associated with

19   other physical and mental conditions, such as aging, stress, depression, and

20   lethargy were actually attributable to low testosterone. Defendants knew, or

21   should have known, these assertions to be false, and had no reasonable

22   grounds to believe them to be true.

23      45.     Defendants' advertising programs sought to create the image

24   and belief by consumers and their physicians that the use of Androgel was a

25   safe method of alleviating their symptoms, had few side effects and would

26   not interfere with their daily lives even though Defendants knew, or should

27   have known these assertions to be false, and had no reasonable grounds to

28   believe them to be true.

29      46.     Defendants purposefully downplayed, understated and

30   outright ignored the health hazards and risks associated with using

31   Androgel. Defendants deceived potential Androgel users by

32   overemphasizing and misrepresenting the prevalence and dangers of low

33   testosterone, while downplaying known adverse and serious health effects

34   of testosterone therapies, including Androgel.

35      47.     Defendants concealed materially relevant information from

36   potential testosterone users and minimized user and prescriber concern

37   regarding the safety of Androgel.

Complaint for Wrongful Death and Demand for Jury Trial

48.     In particular, in the warnings Defendants gave and give in their commercials, and online and print advertisements, Defendants had failed and fail to mention significant side effects of Androgel and had falsely represented and represent that Defendants have adequately tested it for all likely side effects.

49.     Defendants did not provide adequate warnings to Decedent's doctors, Decedent, Plaintiff, the healthcare community and the general public about the increased risk of serious adverse events that are described herein.

50.     The product warnings for Androgel in effect during the time period Decedent used Androgel were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert prescribing physicians and/or Decedent of the serious risks associated with this drug.

51.     As a result of Defendants' advertising and marketing, and representations about their products, men in the United States, including Decedent, pervasively sought out and seek out prescriptions for testosterone, including Androgel.

**Androgel Caused Decedent's Death**

52.     As a direct and proximate result of Defendants' conduct, Decedent's physician prescribed Androgel to Decedent, and Decedent used Androgel.

53.     In choosing to use Androgel, Decedent and Decedent's physician relied on claims made by Defendants that low testosterone is a disease that requires pharmaceutical drug treatment.

54.     In choosing to use Androgel, Decedent and Decedent's physician relied on claims made by Defendants that testosterone had been clinically shown to safely and effectively raise testosterone levels.

55.     Had Decedent and/or Decedent's physician been adequately warned of the potential life-threatening side effects of Androgel, Decedent would not have purchased or used Androgel.

56.     Decedent, a resident of the State of California, purchased Androgel from a pharmacy in California. On information and belief, Defendant McKesson was the distributor that supplied this pharmacy with the Androgel that Decedent purchased and used.

57.     As a result of using Androgel, Decedent died. Due to Decedent's death, Decedent's spouse (Plaintiff) has suffered loss of consortium damages arising therefrom.

Complaint for Wrongful Death and Demand for Jury Trial

**Discovery Rule & Fraudulent Concealment**

58.     The nature of Decedent's injuries and damages, and their relationship to Androgel, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiff, until a time less than two years before the filing of this Complaint.

59.     Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Decedent and Plaintiff the nature of Decedent's injury and the connection between Decedent's death and all Defendants' tortious conduct.

**No Federal Claims Pleaded**

60.     Plaintiff's claims in this action are brought solely under state law. Plaintiff does not herein bring, assert, or allege, either expressly or impliedly, any causes of action arising under any federal law, statute, regulation, or provision. Thus, there is no federal jurisdiction in this action on the basis of a federal question under 28 U.S.C. section 1331.

61.     Furthermore, federal diversity jurisdiction is lacking in this action. Complete diversity does not exist between the parties and therefore the federal courts lack jurisdiction under 28 U.S.C. section 1332.

**First Cause of Action**

**Strict Liability: Failure to Warn**

62.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

63.     Androgel was defective due to inadequate warnings or instruction for use, both prior to marketing and post-marketing. Defendants knew or should have known that Androgel created significant risks of serious bodily harm and death to consumers. Defendants failed to adequately warn consumers and their healthcare providers of such risks.

64.     Because of Defendants' failure to provide adequate warnings with their products, Decedent used Androgel, which the Defendants manufactured, designed, sold, supplied, marketed or otherwise introduced into the stream of commerce. Androgel is the legal cause of Decedent's death and Plaintiff's harm, damages and economic loss. Plaintiff will continue to suffer such harm, damages and economic loss in the future.

**Second Cause of Action**

**Negligence**

65.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

Complaint for Wrongful Death and Demand for Jury Trial

66.     Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, sale and/or distribution of Androgel. In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily harm and adverse events.

67.     Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, marketing, or distribution of Androgel in that they knew or should have known that Androgel could cause significant bodily harm or death and was not safe for use by certain types of consumers.

68.     Defendants failed to exercise ordinary care in the labeling of Androgel and failed to issue to consumers and their healthcare providers adequate warnings concerning the risks of serious bodily injury or death due to the use of Androgel.

69.     Despite the fact that Defendants knew or should have known that Androgel posed a serious risk of bodily harm to consumers, Defendants unreasonably continued to manufacture and market Androgel, and failed to exercise reasonable care with respect to post-sale warnings and instructions for safe use.

70.     At all relevant times, it was foreseeable to Defendants that consumers like Decedent and Plaintiff would suffer injury as a result of their failure to exercise ordinary care as described above.

71.     As a direct and proximate result of Defendants' negligence, Decedent died and Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**Third Cause of Action**

**Fraud**

72.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

73.     On information and belief, Defendants knowingly and intentionally made materially false and misleading representations to Decedent's healthcare providers and to the public, to the effect that Androgel was safe for use and that their labeling, marketing and promotional materials fully described all known risks associated with their product.

74.     On information and belief, Defendants' representations were

Complaint for Wrongful Death and Demand for Jury Trial

1  in fact false. Androgel is not safe for use and Defendants' labeling,
2  marketing and promotional materials did not fully describe all known risks
3  of the product.

4       75.    On information and belief, Defendants had actual knowledge
5  that Androgel created an unreasonable risk of serious bodily injury and
6  death to consumers, including the risk of the injury that Androgel caused in
7  Decedent.

8       76.    On information and belief, Defendants knowingly and
9  intentionally omitted this information from their labeling, marketing, and
10 promotional materials and instead labeled, promoted and marketed their
11 products as safe for use in order to increase and sustain sales.

12      77.    On information and belief, when Defendants made
13 representations that Androgel was safe for use, they knowingly and
14 intentionally concealed and withheld from Decedent, Decedent's physician
15 and the public, the fact that Androgel was not safe for use, and causes
16 serious side effects, including the injuries that Androgel caused in
17 Decedent.

18      78.    Defendants had a duty to fully disclose the risks associated
19 with Androgel use, including the risk of the injuries that Androgel caused
20 in Decedent. Defendants had superior knowledge of these facts that were
21 material to the decisions of Decedent and Decedent's healthcare providers
22 to use Androgel.

23      79.    Decedent and Decedent's healthcare providers reasonably and
24 justifiably relied on the Defendants' representations that Androgel was safe
25 for use and that Defendants' labeling, marketing and promotional materials
26 fully described all known risks associated with the product.

27      80.    Decedent did not know, and could not have learned of the
28 facts that the Defendants omitted and suppressed. The facts suppressed and
29 concealed by the Defendants are material. Had Decedent and Decedent's
30 healthcare providers known the truth concerning the risks associated with
31 Androgel use, Decedent would not have used Androgel.

32      81.    As a direct and proximate result of Defendants'
33 misrepresentations and concealment, Decedent was prescribed and used
34 Androgel, and due to Decedent's death, Plaintiff has suffered harm,
35 damages and economic loss and will continue to suffer such harm, damages
36 and economic loss in the future.

37      82.    The foregoing acts, conduct and omissions of Defendants

1 were vile, base, willful, malicious, wanton, oppressive and fraudulent, and

2 were done with a conscious disregard for the health, safety and rights of

3 Decedent and other users of Defendants' products, and for the primary

4 purpose of increasing Defendants' profits. As such, Plaintiff is entitled to

5 exemplary damages.

6 **Fourth Cause of Action**

7 **Fraud: Concealment, Suppression or Omission of Material Facts**

8   83. Plaintiff incorporates by reference and realleges each

9 paragraph set forth above.

10   84. Defendants omitted, suppressed, or concealed material facts

11 concerning the dangers and risks associated with the use of Androgel,

12 including but not limited to the risks of the injuries that Androgel caused in

13 Decedent, and the fact that safer alternatives were available. Further,

14 Defendants purposely downplayed and understated the serious nature of the

15 risks associated with use of Androgel in order to increase and sustain sales.

16   85. As a direct and proximate result of Defendants' concealment

17 of material facts, Decedent was prescribed and used Androgel and died.

18 Due to Decedent's death, Plaintiff has suffered harm, damages and

19 economic loss and will continue to suffer harm, damages and economic loss

20 in the future.

21   86. The foregoing acts, conduct and omissions of Defendants

22 were vile, base, willful, malicious, wanton, oppressive and fraudulent, and

23 were done with a conscious disregard for the health, safety and rights of

24 Decedent and other users of Defendants' products, and for the primary

25 purpose of increasing Defendants' profits. As such Plaintiff is entitled to

26 exemplary damages.

27 **Fifth Cause of Action**

28 **Negligent Misrepresentation**

29   87. Plaintiff incorporates by reference and realleges each

30 paragraph set forth above.

31   88. On information and belief, Defendants supplied the public

32 and Decedent's healthcare providers with materially false and incomplete

33 information with respect to the safety of Androgel.

34   89. In supplying this false information, Defendants failed to

35 exercise reasonable care.

36   90. The false information communicated by Defendants to

37 Decedent and Decedent's healthcare providers was material, and Decedent

1  and Decedent's healthcare providers justifiably relied in good faith on the
2  information to Decedent's and Plaintiff's detriment.

3      91.    As a direct and proximate result of Defendants'
4  misrepresentations, Decedent was prescribed and used Androgel and died.
5  As a result, Plaintiff has suffered harm, damages and economic loss and
6  will continue to suffer such harm, damages and economic loss in the future.

7  **Sixth Cause of Action**
8  **Breach of Implied Warranty**

9      92.    Plaintiff incorporates by reference and realleges each
10  paragraph set forth above.

11      93.    Prior to the time that Decedent used Androgel, Defendants
12  impliedly warranted to Decedent and Decedent's agents and physicians that
13  Androgel was of merchantable quality and safe and fit for the use for which
14  it was intended.

15      94.    Decedent was and is unskilled in the research, design and
16  manufacture of the products such as Androgel and reasonably relied
17  entirely on the skill, judgment and implied warranty of the Defendants in
18  using Androgel.

19      95.    Androgel was neither safe for its intended use nor of
20  merchantable quality, as warranted by Defendants, in that Androgel has
21  dangerous propensities when used as intended and will cause severe
22  injuries to users.

23      96.    As a result of the abovementioned breach of implied
24  warranties by Defendants, Decedent and Plaintiff suffered injuries and
25  damages as alleged herein.

26  **Seventh Cause of Action**
27  **Breach of Express Warranty**

28      97.    Plaintiff incorporates by reference and realleges each
29  paragraph set forth above.

30      98.    At all times mentioned, Defendants expressly represented and
31  warranted to Decedent and Decedent's agents and physicians, by and
32  through statements made by Defendants or their authorized agents or sales
33  representatives, orally and in publications, package inserts and other written
34  materials intended for physicians, medical patients and the general public,
35  that Androgel is safe, effective, fit and proper for its intended use. Decedent
36  purchased Androgel relying on these warranties.

37      99.    In utilizing Androgel, Decedent relied on the skill, judgment,

representations, and foregoing express warranties of Defendants. These warranties and representations were false in that Androgel is unsafe and unfit for its intended uses.

100.    As a result of the abovementioned breach of express warranties by Defendants, Decedent and Plaintiff suffered injuries and damages as alleged herein.

**Eighth Cause of Action**

**Violation of California Consumers Legal Remedies Act**

101.    Plaintiff incorporates by reference and realleges each paragraph set forth above.

102.    This Complaint is filed and these proceedings are instituted pursuant to California Civil Code section 1750, *et seq.,* known as the California Consumers Legal Remedies Act ("CLRA"), to obtain injunctive relief and attorneys' fees from Defendants.

103.    Defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts within the meaning of CLRA including but not limited to the following:

        a.  Representing to Decedent, Decedent's physicians and the general public that Androgel was safe, fit and effective for all patients, knowing that said representations were false;

        b.  Concealing from Decedent, Decedent's physicians and the general public that Androgel had a serious propensity to cause injuries, and even death, to users;

        c.  Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the use of Androgel was safe, and had fewer side effects and adverse reactions than other options for treating symptoms of low testosterone, even though the Defendants knew these to be false, and/or had no reasonable grounds to believe them to be true;

        d.  Purposely downplaying and understating the health hazards and risks associated with Androgel.

104.    Defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts within the meaning of CLRA. Plaintiff demands that Defendants immediately cease the illegal conduct alleged herein.

105.    The illegal conduct alleged herein is continuing and there is

16

Complaint for Wrongful Death and Demand for Jury Trial

1   no indication that Defendants will refrain from such activity in the future.

2   106.   Pursuant to the CLRA, Plaintiff is entitled to injunctive relief

3   and attorneys' fees.

### Ninth Cause of Action

### Violation of Business & Professions Code § 17200

6   107.   Plaintiff incorporates by reference and realleges each

7   paragraph set forth above.

8   108.   Plaintiff brings this cause of action pursuant to California

9   Business & Professions Code § 17204.

10   109.   California Business & Professions Code § 17200 provides

11   that unfair competition shall mean and include "all unlawful, unfair or

12   fraudulent business practices and unfair, deceptive, untrue or misleading

13   advertising".

14   110.   The acts and practices described above were and are likely to

15   mislead the general public and therefore constitute unfair business practices

16   within the meaning of California Business & Professions Code § 17200.

17   The acts of untrue and misleading advertising set forth in preceding

18   paragraphs are incorporated by reference and are, by definition, violations

19   of California Business & Professions Code § 17200. This conduct includes,

20   but is not limited to:

21   a.   Representing to Decedent, Decedent's physicians, and the

22   general public that Androgel was safe, fit, and effective

23   for human consumption, knowing that said representations

24   were false, and concealing from the Decedent, Decedent's

25   physicians, and the general public that Androgel had a

26   serious propensity to cause injuries to users;

27   b.   Engaging in advertising programs designed to create the

28   image, impression and belief by consumers and physicians

29   that Androgel was safe for human consumption and would

30   not interfere with daily life, even though the Defendants

31   knew these to be false, and even though the Defendants

32   had no reasonable grounds to believe them to be true;

33   c.   Purposely downplaying and understating the health

34   hazards and risks associated with Androgel;

35   d.   Issuing promotional literature and commercials deceiving

36   potential users of Androgel by relaying positive

37   information, including testimonials from satisfied users,

17

Complaint for Wrongful Death and Demand for Jury Trial

and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety of Androgel.

111.   These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California Business & Professions Code § 17200.

112.   The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

113.   As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and prescription of Androgel in California, sold in large part as a result of the acts and omissions described herein.

114.   Because of fraudulent misrepresentations made by Defendants as detailed above, and the inherently unfair practice of committing a fraud against the public by intentionally misrepresenting and concealing material information, the acts of Defendants described herein constitute unfair or fraudulent business practices.

115.   Plaintiff, pursuant to California Business & Professions Code § 17203, seeks an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

## Tenth Cause of Action
### Loss of Consortium

116.   Plaintiff incorporates by reference and realleges each paragraph set forth above.

117.   As a direct and proximate result of Defendants' conduct, Plaintiff has been deprived of love, society, companionship and services and has otherwise suffered loss, the extent of which will be more fully adduced at the trial of this matter.

## Eleventh Cause of Action
### Wrongful Death

118.   Plaintiff incorporates by reference and realleges each paragraph set forth above.

Complaint for Wrongful Death and Demand for Jury Trial

119.    As a direct and proximate result of Defendants' negligence, carelessness and/or recklessness Decedent was injured in such a way as to cause his premature death.

120.    Furthermore, by reason of Decedent's death, Plaintiff has been permanently deprived of love, care, companionship, comfort, services, society, solace, affection, instruction, advice, training, guidance, protection, counsel, support, contributions, consortium, accumulations, inheritance and right of inheritance of Decedent, and has suffered grief and sorrow, all to her damage in an amount within the jurisdiction of this court, and according to proof.

**Twelfth Cause of Action**

**Survival Action**

121.    Plaintiff incorporates by reference and realleges each paragraph set forth above.

122.    Prior to his death, Decedent incurred substantial damages, and medical and/or hospital expenses as a direct and proximate result of the acts and/or omissions of the Defendants, and each of them, as herein alleged. The amount of those damages will be shown according to proof at the time of trial.

123.    A cause of action for recovery of such damages by Decedent's successors in interest survives their death pursuant to California Code of Civil Procedure 377.

124.    Defendants and each of them, acted in conscious disregard for the safety of Decedent with respect to matters alleged herein. Said disregard resulted in injuries and special damages, and warrants recovery of punitive damages by Decedent's successors in interest against Defendants.

**Prayer**

Wherefore, Plaintiff prays for relief as follows:

1.    For an injunction prohibiting Defendants from engaging in conduct which violates the California Consumers Legal Remedies Act;

2.    For an injunction prohibiting Defendants from engaging in conduct which violates the California Business & Professions Code § 17200, et seq.;

3.    Special damages according to proof;

4.    General damages according to proof;

5.    Medical expenses, past and future, according to proof;

6.    Punitive damages;

7.    Pre- and post-judgment interest;

8.    Attorneys' fees, expenses, and costs; and

9.    Such further relief as this Court deems necessary, just, and proper.

Dated:  July 2, 2014                    Respectfully submitted,

Albertson & Davidson, LLP

By: _____
Stewart R. Albertson, SBN 230841
3491 Concours, Suite 201
Ontario, California 91764
(909) 466-1711
(909) 354-3460 fax
stewart@aldavlaw.com

### Demand for Jury Trial

Plaintiff hereby demands a jury trial on all counts in this Complaint.

Dated:  July 2, 2014                    Respectfully submitted,

Albertson & Davidson, LLP

By: _____
Stewart R. Albertson, SBN 230841
3491 Concours, Suite 201
Ontario, California 91764
(909) 466-1711
(909) 354-3460 fax
stewart@aldavlaw.com



**CORPORATION SERVICE COMPANY**

null / ALL
Transmittal Number: 12758392
Date Processed: 07/22/2014

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Kimbir Tate<br>McKesson Corporation<br>One Post Street<br>Floor 35th<br>San Francisco, CA 94104 |
| **Copy of transmittal only provided to:** | Monique Moore<br>Erin McKinney<br>Michael Gormley<br>Sonia Advani<br>Carole Ungvarsky<br>Lindsey Wagner<br>Michael Rossi<br>Gloria Lee<br>Nimmi Solomon |

| | |
|---|---|
| **Entity:** | McKesson Corporation<br>Entity ID Number  0493907 |
| **Entity Served:** | McKesson Corporation |
| **Title of Action:** | Evelyn Calvillo vs. AbbVie, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Wrongful Death |
| **Court/Agency:** | Orange County Superior Court, California |
| **Case/Reference No:** | 30-2014-00732840-CU-PO-CJC |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 07/21/2014 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Stewart R. Albertson<br>909-466-1711 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| | SUM-100 |
|---|---|

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AbbVie, Inc.; Abbott Laboratories, Inc.; McKesson Corporation; and Does 1-100,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Evelyn Calvillo,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**07/07/2014** at 04:44:37 PM
Clerk of the Superior Court
By Robert Renison, Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* 30-2014-00732840-CU-PO-CJC |
|---|---|
| Orange County Superior Court 700 Civic Center Drive West 700 Civic Center Drive West Santa Ana, CA 92701 Central Justice Center | Judge William Claster |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Albertson & Davidson, LLP  (909) 466-1711  Fax (909) 354-3460
Stewart R Albertson, SBN 230841
3491 Concours  Suite 201, Ontario, California 91764

DATE: 07/07/2014   ALAN CARLSON, Clerk of the Court   Clerk, by _____, Deputy
*(Fecha)*   *(Secretario)*   Robert Renison   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010)*.)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF ORANGE

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Mc Kesson Corporation
   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**07/07/2014** at 04:44:37 PM
Clerk of the Superior Court
By Robert Renison, Deputy Clerk

1  Stewart R. Albertson, SBN 230841
2  stewart@aldavlaw.com
3  Heather G. Cote, SBN 293368
4  hgreen@aldavlaw.com
   Albertson & Davidson, LLP
5  3491 Concours, Suite 201
6  Ontario, California 91764
7  (909) 466-1711
8  (909) 354-3460 fax

9  Attorneys for Plaintiff

10

11

12

13            **Superior Court of the State of California**

14                  **For the County of Orange**

15

16  Evelyn Calvillo,                    Case No.: 30-2014-00732840-CU-PO-CJC

17                                      Judge William Claster

18          Plaintiff,                  Complaint for Wrongful Death and
                                        Demand for Jury Trial
19

20

21          v.

22

23

24  AbbVie, Inc.; Abbott Laboratories, Inc.;
25  McKesson Corporation; and
    Does 1-100,
26

27          Defendants.

28

29

30

31

32

33

34

35

36

37

---

1

Complaint for Wrongful Death and Demand for Jury Trial

Plaintiff Evelyn Calvillo ("Plaintiff") alleges as follows:

**Introduction**

1. This case involves the prescription drug AndroGel® ("Androgel"), which, on information and belief, is manufactured, sold, distributed, promoted, labeled, marketed, and advertised by Defendants, and each of them.

2. Androgel is used as a testosterone replacement therapy. Defendants negligently and intentionally misrepresented that Androgel was safe and effective, when in fact it was causing and contributing to serious cardiovascular events, including, but not limited to, heart attacks, strokes, pulmonary embolism, and deep vein thrombosis. Plaintiff's husband, Samuel Calvillo ("Decedent"), used Androgel and died as a result.

**Parties and Jurisdiction**

3. Plaintiff is the surviving spouse of Decedent, and is successor in interest to causes of action of decedent. Plaintiff is also a resident of Orange County. As an heir and successor in interest to Decedent, she is entitled to, and hereby does, bring a wrongful death action.

4. Defendant AbbVie, Inc. is a Delaware corporation with its principal place of business at 1 North Waukegan Road, North Chicago, Illinois 60064. At all times relevant, Defendant AbbVie, Inc., a pharmaceutical company involved in researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing distributing and marketing of pharmaceuticals for distribution, sale, and use by the general public, including Androgel.

5. At all times relevant, AbbVie, Inc. was and is authorized to do business in the State of California and was and is engaged in substantial commerce and business activity in the state of California and Orange County. At all times relevant, Defendant AbbVie, Inc. was engaged in the sale and marketing of pharmaceutical products including Androgel in the State of California and Orange County. On information and belief, Defendant AbbVie, Inc. maintains research facilities in the State of California.

6. Defendant AbbVie, Inc. includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons acting on their behalf.

2

7.     Defendant Abbott Laboratories, Inc. is an Illinois corporation
with its principal place of business at 100 Abbott Park Road, Abbott Park,
Illinois 60064. At all times relevant, Defendant Abbott Laboratories, Inc. a
pharmaceutical company involved in researching, manufacturing, selling,
merchandising, advertising, promoting, labeling, analyzing, testing
distributing and marketing of pharmaceuticals for distribution, sale, and use
by the general public, including Androgel.

8.     At all times relevant, Abbott Laboratories, Inc. was and is
authorized to do business in the State of California and was and is engaged
in substantial commerce and business activity in the state of California and
Orange County. At all times relevant, Abbott Laboratories, Inc. was
engaged in the sale and marketing of pharmaceutical products including
Androgel in the State of California and Orange County. On information and
belief, Abbott Laboratories, Inc. maintains research facilities in the State of
California.

9.     Defendant Abbott Laboratories, Inc. includes any and all
parents, subsidiaries, affiliates, divisions, franchises, partners, joint
venturers and organizational units of any kind, their predecessors,
successors and assigns and their present officers, directors, employees,
agents, representatives and other persons acting on their behalf.

10.     Defendant McKesson is, and at all times material to this
action was, a corporation organized, existing and doing business under and
by virtue of the laws of the State of Delaware, with its principal place of
business at One Post Street, San Francisco, California 94104. At all times
relevant, Defendant McKesson was involved in distribution, sales and
marketing of pharmaceutical products including Androgel in the United
States of America, including the State of California and Orange County. On
information and belief, as part of its involvement in the marketing,
distribution and promotion of Androgel, Defendant McKesson printed
promotional materials and inserts for Androgel and provided them to
physicians in California, including Decedent's physician. On information
and belief, Defendant McKesson labeled, described, advertised, promoted
and purported to warn or inform users regarding the risks pertaining to
Androgel.

11.     Defendant McKesson includes any and all parents,
subsidiaries, affiliates, divisions, franchises, partners, joint venturers and
organizational units of any kind, their predecessors, successors and assigns

3

Complaint for Wrongful Death and Demand for Jury Trial

1   and their present officers, directors, employees, agents, representatives and
2   other persons acting on their behalf.

3       12.    Defendants AbbVie, Inc., Abbott Laboratories, Inc., and
4   McKesson have transacted and conducted business with the State of
5   California, have derived substantial revenue from goods and products used
6   in the State of California, have derived substantial revenue from interstate
7   commerce, and expected, or should have expected, their acts to have
8   consequences within the State of California. This Court has personal
9   jurisdiction over these Defendants.

10      13.    The true names and capacities, whether individual, corporate,
11  associate, or otherwise, of Defendants named herein as Does 1 through 100,
12  and each of them, are unknown to Plaintiff, who therefore, sues said
13  Defendants by such fictitious names.

14      14.    Plaintiff will ask leave to amend this Complaint to state said
15  Defendants' true identities and capacities when the same has been
16  ascertained.

17      15.    Plaintiff is informed and believes and based thereon alleges
18  that each of the Defendants designated herein as "Doe" took part in and
19  participated with the Defendants in all matters referred to herein and was in
20  some manner responsible for the injuries and losses suffered by Decedent
21  and Plaintiff.

22      16.    Plaintiff is informed and believes and based thereon alleges
23  that at all times herein mentioned each of the Defendants was the agent,
24  servant and/or employee or occupied other relationships with each of the
25  other named Defendants and at all times herein mentioned acted within the
26  course and scope of said agency and/or employment and/or other
27  relationship and each other Defendant has ratified, consented to, and
28  approved the acts of its agents, employees, and representatives, and that
29  each actively participated in, aided and abetted, or assisted one another in
30  the commission of the wrongdoing alleged in this Complaint.

31                          **Jurisdiction and Venue**

32      17.    The California Superior Court has jurisdiction over this action
33  pursuant to California Constitution Article VI, Section 10, which grants the
34  Superior Court "original jurisdiction in all causes except those given by
35  statute to other trial courts." The Statutes under which this action is brought
36  do not specify any other basis for jurisdiction.

37      18.    The California Superior Court has jurisdiction over all

Complaint for Wrongful Death and Demand for Jury Trial

1  Defendants because, based on information and belief, each is a corporation
2  and/or entity and/or person organized under the laws of the State of
3  California, a foreign corporation or association authorized to do business in
4  California and registered with the California Secretary of State or that has
5  sufficient minimum contacts in California, is a citizen of California, or
6  otherwise intentionally avails itself of the California market so as to render
7  the exercise of jurisdiction over it by the California courts consistent with
8  traditional notions of fair play and substantial justice.

9       19.    Furthermore Defendants AbbVie, Inc., Abbott Laboratories,
10 Inc., and McKesson have purposefully availed themselves of the benefits
11 and the protections of the laws within the State of California. Defendant
12 McKesson has its principle place of business within the State of California.
13 Defendants AbbVie, Inc., Abbott Laboratories, Inc., and McKesson have
14 had sufficient contact such that the exercise of jurisdiction would be
15 consistent with the traditional notions of fair play and substantial justice.

16      20.    Venue is proper in this court pursuant to California Code of
17 Civil Procedure Section 395 in that Plaintiff resides within Orange County
18 and Decedent suffered an injury in Orange County.

19                          **General Allegations**

20      21.    The pharmaceutical drug at issue in this litigation is
21 Androgel, a testosterone replacement therapy.

22      22.    At all relevant times, Defendants designed, researched,
23 manufactured, tested, advertised, promoted, marketed, sold and distributed
24 Androgel as a testosterone replacement therapy.

25      23.    Unimed Pharmaceuticals, Inc. originally developed Androgel
26 and sought FDA approval in 1999. Before the drug was approved by the
27 FDA in 2000, Solvay Pharmaceuticals Inc. acquired Unimed
28 Pharmaceuticals, Inc. and, subsequently, brought Androgel to market. In
29 2010, Defendant Abbott Laboratories, Inc. acquired Solvay's
30 pharmaceutical division, which included Androgel. In 2013, Abbott
31 Laboratories, Inc. created AbbVie, Inc., a company composed of Abbott
32 Laboratories, Inc.'s former proprietary pharmaceutical business, which
33 included Androgel.

34      24.    The FDA approved Androgel for the treatment of adult males
35 who have low or no testosterone. After the FDA approval, Defendants
36 widely advertised and marketed Androgel as safe and effective testosterone
37 replacement therapy.

5

Complaint for Wrongful Death and Demand for Jury Trial

1        25.     Androgel is a hydroalcoholic gel containing testosterone. It is

2   applied to the upper arms/shoulders or abdomen. The drug enters the body

3   through transdermal absorption.

4        26.     Defendants participated in advertising campaigns designed to

5   convince men that they suffered from low testosterone. Defendants

6   participated in national disease awareness media blitzes that purported to

7   educate male consumers about the signs of low testosterone. The national

8   marketing campaigns consisted of television advertisements, promotional

9   literature placed in healthcare providers' offices and distributed to potential

10   testosterone users, and online media. Defendant Abbott Laboratories, Inc.

11   reportedly spent approximately $80 million promoting Androgel in 2012

12   alone.

13        27.     Defendants' advertisements suggest that various symptoms

14   often associated with other conditions may be caused by low testosterone

15   and encourage men to discuss testosterone replacement therapy with their

16   doctors if they experienced any of the "symptoms" of low testosterone.

17   These "symptoms" include listlessness, increased body fat, and moodiness-

18   -all general symptoms that are often a result of aging, weight gain, or

19   lifestyle, rather than low testosterone.

20        28.     Defendants' advertising campaigns included and include the

21   unbranded website "IsItLowT.com" that purports to provide facts regarding

22   low testosterone, diagnosis tools, and recommendations and solutions for

23   treating the condition.

24        29.     Defendants published a quiz on their "IsItLowT" website

25   titled "Androgen Deficiency in Adult Males" (ADAM) or "Is it Low T?"

26   The website encourages consumers to take the quiz to find out whether

27   their symptoms could be caused by low testosterone levels. According to

28   the "Is it Low T?" quiz, the symptoms of "Low T" include being "sad or

29   grumpy," "experiencing deterioration in the ability to play sports," and

30   "falling asleep after dinner." See, *www.isitlowt.com/do-you-have-low-t/low-*

31   *t-quiz.*

32        30.     The "Is it Low T?" quiz was developed by Dr. John Morley,

33   Director of Endocrinology and Geriatrics at the St. Louis University School

34   of Medicine, at the request of a Dutch pharmaceutical company Organon

35   BioSciences and, in exchange for a $40,000 grant to his university, Dr.

36   Morley was told to keep the survey brief and to "make it somewhat sexy."

37   In fact, according to Natasha Singer, *Selling that New-Man Feeling*, Nov.

6

1   23, 2013, N.Y. Times, Dr. Morley admitted that he drafted the survey in a
2   bathroom in less than 30 minutes, scribbling the questions on toilet paper.
3   Dr. Morley has "no trouble calling it a crappy questionnaire," and he has
4   stated that the survey is "not ideal" as a tool for helping to determine
5   whether an individual's symptoms are caused by low testosterone levels.
6       31.    The symptoms described in the "Is it Low T?" quiz can be
7   caused by an abundance of factors, including the natural aging process.
8       32.    Defendants have also sought to convince primary care
9   physicians that low testosterone levels are widely under-diagnosed, and that
10   conditions associated with normal aging could be caused by low
11   testosterone levels.
12       33.    Defendants' marketing campaigns have been very successful,
13   convincing millions of men that they need testosterone replacement
14   therapy. As a result of Defendants' "disease mongering," as termed by Dr.
15   Adriane Fugh-Berman of Georgetown University Medical Center, the
16   number of individuals diagnosed with Low T has increased exponentially.
17       34.    In 1999, when Unimed Pharmaceuticals, Inc., one of the
18   Defendants' predecessor companies, petitioned the FDA to approve
19   Androgel, Unimed Pharmaceuticals, Inc. claimed that hypogonadism
20   affected approximately "one million American men." The FDA approved
21   Androgel in 2000, by which time Unimed Pharmaceuticals, Inc. had
22   announced that the market for Androgel was "four to five million American
23   men." Three years later, in 2003, the market for Androgel had increased to
24   "up to 20 million men."
25       35.    While running their campaigns for the awareness of low
26   testosterone as a disease, Defendants promoted and promote their
27   testosterone products as easy to use topical testosterone replacement
28   therapies.
29       36.    Defendants convinced millions of men to discuss testosterone
30   replacement therapy with their doctors, and consumers and their physicians
31   relied on Defendants' promises of safety and ease. Although prescription
32   testosterone replacement therapy had been available for years, millions of
33   men who had never been prescribed testosterone flocked to their doctors
34   and pharmacies.
35       37.    However, these men were enticed to take dangerous
36   medication that carries no benefit because many, if not most, of these men
37   did not suffer from any testosterone-related condition that required medical

7

Complaint for Wrongful Death and Demand for Jury Trial

1   intervention.

2       38.    A study published in the Journal of the American Medical

3   Association ("JAMA") in August 2013 entitled "Trends in Androgen

4   Prescribing in the United States, 2001-2011" indicated that many men who

5   get testosterone prescriptions have no evidence of hypogonadism. For

6   example, one third of men prescribed testosterone had a diagnosis of

7   fatigue, and one quarter of men did not even have their testosterone levels

8   tested before they received a testosterone prescription.

9       39.    The increase in the number of patients misdiagnosed with

10  hypogonadism as a result of Defendants' advertising efforts has resulted in

11  over $1.37 billion in annual sales of Androgel. Androgel is the top selling

12  androgen drug in the United States. According to Shannon Pettypiece, *Are*

13  *Testosterone Drugs the Next Viagra?,* Bloomberg Businessweek, May 10,

14  2012, estimates indicate that sales are expected to triple in the next few

15  years, bringing in over $5 billion by the year 2017.

16               **The Dangers of Testosterone Therapy**

17       40.    Testosterone therapies, including Androgel, are not safe

18  drugs, but products that cause life-threatening problems including blood

19  clots, strokes and heart attacks.

20       41.    There have been a number of studies suggesting that

21  testosterone in men increases the risk of serious side effects:

22          a.  In 2010, a New England Journal of Medicine study

23              entitled "Adverse Events Associated with Testosterone

24              Administration" was discontinued after an exceedingly

25              high number of men in the testosterone group suffered

26              adverse events.

27          b.  In November of 2013, a JAMA study entitled

28              "Association of Testosterone Therapy with Mortality,

29              Myocardial Infarction, and Stroke in Men with Low

30              Testosterone Levels" indicated that testosterone therapy

31              raised the risk of death, heart attack and stroke by about

32              30%.

33          c.  On January 29, 2014, a study was released in PLOS ONE

34              entitled "Increased Risk of Non-Fatal Myocardial

35              Infarction Following Testosterone Therapy Prescription in

36              Men." This study indicated that testosterone increases the

37              risk of heart attacks in men over sixty-five years old by

8

200% and in men younger than sixty-five with a previous diagnosis of heart disease by up to 300%.

42.     Secondary exposure to testosterone can cause side effects in others. In 2009, the FDA issued a black box warning for testosterone prescriptions, advising patients of reported virilization in children who were secondarily exposed to the gel. Testosterone may also cause physical changes in women exposed to the drug and cause fetal damage with pregnant women who come into secondary contact with testosterone.

**Defendants Misrepresented and Failed to**
**Warn of the Dangers of Androgel**

43.     Defendants' marketing strategy has been to aggressively market and sell Androgel by misleading potential users about the prevalence and symptoms of low testosterone. Defendants failed to protect users from serious dangers that Defendants knew, or should have known, can result from the use of Androgel.

44.     Defendants successfully marketed Androgel by undertaking campaigns designed to create a consumer perception that low testosterone is prevalent among U.S. men and that symptoms previously associated with other physical and mental conditions, such as aging, stress, depression, and lethargy were actually attributable to low testosterone. Defendants knew, or should have known, these assertions to be false, and had no reasonable grounds to believe them to be true.

45.     Defendants' advertising programs sought to create the image and belief by consumers and their physicians that the use of Androgel was a safe method of alleviating their symptoms, had few side effects and would not interfere with their daily lives even though Defendants knew, or should have known these assertions to be false, and had no reasonable grounds to believe them to be true.

46.     Defendants purposefully downplayed, understated and outright ignored the health hazards and risks associated with using Androgel. Defendants deceived potential Androgel users by overemphasizing and misrepresenting the prevalence and dangers of low testosterone, while downplaying known adverse and serious health effects of testosterone therapies, including Androgel.

47.     Defendants concealed materially relevant information from potential testosterone users and minimized user and prescriber concern regarding the safety of Androgel.

9

48.    In particular, in the warnings Defendants gave and give in their commercials, and online and print advertisements, Defendants had failed and fail to mention significant side effects of Androgel and had falsely represented and represent that Defendants have adequately tested it for all likely side effects.

49.    Defendants did not provide adequate warnings to Decedent's doctors, Decedent, Plaintiff, the healthcare community and the general public about the increased risk of serious adverse events that are described herein.

50.    The product warnings for Androgel in effect during the time period Decedent used Androgel were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert prescribing physicians and/or Decedent of the serious risks associated with this drug.

51.    As a result of Defendants' advertising and marketing, and representations about their products, men in the United States, including Decedent, pervasively sought out and seek out prescriptions for testosterone, including Androgel.

**Androgel Caused Decedent's Death**

52.    As a direct and proximate result of Defendants' conduct, Decedent's physician prescribed Androgel to Decedent, and Decedent used Androgel.

53.    In choosing to use Androgel, Decedent and Decedent's physician relied on claims made by Defendants that low testosterone is a disease that requires pharmaceutical drug treatment.

54.    In choosing to use Androgel, Decedent and Decedent's physician relied on claims made by Defendants that testosterone had been clinically shown to safely and effectively raise testosterone levels.

55.    Had Decedent and/or Decedent's physician been adequately warned of the potential life-threatening side effects of Androgel, Decedent would not have purchased or used Androgel.

56.    Decedent, a resident of the State of California, purchased Androgel from a pharmacy in California. On information and belief, Defendant McKesson was the distributor that supplied this pharmacy with the Androgel that Decedent purchased and used.

57.    As a result of using Androgel, Decedent died. Due to Decedent's death, Decedent's spouse (Plaintiff) has suffered loss of consortium damages arising therefrom.

10

**Discovery Rule & Fraudulent Concealment**

58.     The nature of Decedent's injuries and damages, and their relationship to Androgel, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiff, until a time less than two years before the filing of this Complaint.

59.     Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Decedent and Plaintiff the nature of Decedent's injury and the connection between Decedent's death and all Defendants' tortious conduct.

**No Federal Claims Pleaded**

60.     Plaintiff's claims in this action are brought solely under state law. Plaintiff does not herein bring, assert, or allege, either expressly or impliedly, any causes of action arising under any federal law, statute, regulation, or provision. Thus, there is no federal jurisdiction in this action on the basis of a federal question under 28 U.S.C. section 1331.

61.     Furthermore, federal diversity jurisdiction is lacking in this action. Complete diversity does not exist between the parties and therefore the federal courts lack jurisdiction under 28 U.S.C. section 1332.

**First Cause of Action**

**Strict Liability: Failure to Warn**

62.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

63.     Androgel was defective due to inadequate warnings or instruction for use, both prior to marketing and post-marketing. Defendants knew or should have known that Androgel created significant risks of serious bodily harm and death to consumers. Defendants failed to adequately warn consumers and their healthcare providers of such risks.

64.     Because of Defendants' failure to provide adequate warnings with their products, Decedent used Androgel, which the Defendants manufactured, designed, sold, supplied, marketed or otherwise introduced into the stream of commerce. Androgel is the legal cause of Decedent's death and Plaintiff's harm, damages and economic loss. Plaintiff will continue to suffer such harm, damages and economic loss in the future.

**Second Cause of Action**

**Negligence**

65.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

11

Complaint for Wrongful Death and Demand for Jury Trial

66.     Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, sale and/or distribution of Androgel. In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily harm and adverse events.

67.     Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, marketing, or distribution of Androgel in that they knew or should have known that Androgel could cause significant bodily harm or death and was not safe for use by certain types of consumers.

68.     Defendants failed to exercise ordinary care in the labeling of Androgel and failed to issue to consumers and their healthcare providers adequate warnings concerning the risks of serious bodily injury or death due to the use of Androgel.

69.     Despite the fact that Defendants knew or should have known that Androgel posed a serious risk of bodily harm to consumers, Defendants unreasonably continued to manufacture and market Androgel, and failed to exercise reasonable care with respect to post-sale warnings and instructions for safe use.

70.     At all relevant times, it was foreseeable to Defendants that consumers like Decedent and Plaintiff would suffer injury as a result of their failure to exercise ordinary care as described above.

71.     As a direct and proximate result of Defendants' negligence, Decedent died and Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

### Third Cause of Action
### Fraud

72.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

73.     On information and belief, Defendants knowingly and intentionally made materially false and misleading representations to Decedent's healthcare providers and to the public, to the effect that Androgel was safe for use and that their labeling, marketing and promotional materials fully described all known risks associated with their product.

74.     On information and belief, Defendants' representations were

12

Complaint for Wrongful Death and Demand for Jury Trial

1   in fact false. Androgel is not safe for use and Defendants' labeling,
2   marketing and promotional materials did not fully describe all known risks
3   of the product.

4        75.    On information and belief, Defendants had actual knowledge
5   that Androgel created an unreasonable risk of serious bodily injury and
6   death to consumers, including the risk of the injury that Androgel caused in
7   Decedent.

8        76.    On information and belief, Defendants knowingly and
9   intentionally omitted this information from their labeling, marketing, and
10  promotional materials and instead labeled, promoted and marketed their
11  products as safe for use in order to increase and sustain sales.

12       77.    On information and belief, when Defendants made
13  representations that Androgel was safe for use, they knowingly and
14  intentionally concealed and withheld from Decedent, Decedent's physician
15  and the public, the fact that Androgel was not safe for use, and causes
16  serious side effects, including the injuries that Androgel caused in
17  Decedent.

18       78.    Defendants had a duty to fully disclose the risks associated
19  with Androgel use, including the risk of the injuries that Androgel caused
20  in Decedent. Defendants had superior knowledge of these facts that were
21  material to the decisions of Decedent and Decedent's healthcare providers
22  to use Androgel.

23       79.    Decedent and Decedent's healthcare providers reasonably and
24  justifiably relied on the Defendants' representations that Androgel was safe
25  for use and that Defendants' labeling, marketing and promotional materials
26  fully described all known risks associated with the product.

27       80.    Decedent did not know, and could not have learned of the
28  facts that the Defendants omitted and suppressed. The facts suppressed and
29  concealed by the Defendants are material. Had Decedent and Decedent's
30  healthcare providers known the truth concerning the risks associated with
31  Androgel use, Decedent would not have used Androgel.

32       81.    As a direct and proximate result of Defendants'
33  misrepresentations and concealment, Decedent was prescribed and used
34  Androgel, and due to Decedent's death, Plaintiff has suffered harm,
35  damages and economic loss and will continue to suffer such harm, damages
36  and economic loss in the future.

37       82.    The foregoing acts, conduct and omissions of Defendants

13

Complaint for Wrongful Death and Demand for Jury Trial

1  were vile, base, willful, malicious, wanton, oppressive and fraudulent, and
2  were done with a conscious disregard for the health, safety and rights of
3  Decedent and other users of Defendants' products, and for the primary
4  purpose of increasing Defendants' profits. As such, Plaintiff is entitled to
5  exemplary damages.

<b>Fourth Cause of Action</b>

<b>Fraud: Concealment, Suppression or Omission of Material Facts</b>

8    83.   Plaintiff incorporates by reference and realleges each
9  paragraph set forth above.

10    84.   Defendants omitted, suppressed, or concealed material facts
11  concerning the dangers and risks associated with the use of Androgel,
12  including but not limited to the risks of the injuries that Androgel caused in
13  Decedent, and the fact that safer alternatives were available. Further,
14  Defendants purposely downplayed and understated the serious nature of the
15  risks associated with use of Androgel in order to increase and sustain sales.

16    85.   As a direct and proximate result of Defendants' concealment
17  of material facts, Decedent was prescribed and used Androgel and died.
18  Due to Decedent's death, Plaintiff has suffered harm, damages and
19  economic loss and will continue to suffer harm, damages and economic loss
20  in the future.

21    86.   The foregoing acts, conduct and omissions of Defendants
22  were vile, base, willful, malicious, wanton, oppressive and fraudulent, and
23  were done with a conscious disregard for the health, safety and rights of
24  Decedent and other users of Defendants' products, and for the primary
25  purpose of increasing Defendants' profits. As such Plaintiff is entitled to
26  exemplary damages.

<b>Fifth Cause of Action</b>

<b>Negligent Misrepresentation</b>

29    87.   Plaintiff incorporates by reference and realleges each
30  paragraph set forth above.

31    88.   On information and belief, Defendants supplied the public
32  and Decedent's healthcare providers with materially false and incomplete
33  information with respect to the safety of Androgel.

34    89.   In supplying this false information, Defendants failed to
35  exercise reasonable care.

36    90.   The false information communicated by Defendants to
37  Decedent and Decedent's healthcare providers was material, and Decedent

14

Complaint for Wrongful Death and Demand for Jury Trial

1  and Decedent's healthcare providers justifiably relied in good faith on the
2  information to Decedent's and Plaintiff's detriment.
3      91.   As a direct and proximate result of Defendants'
4  misrepresentations, Decedent was prescribed and used Androgel and died.
5  As a result, Plaintiff has suffered harm, damages and economic loss and
6  will continue to suffer such harm, damages and economic loss in the future.

**Sixth Cause of Action**

**Breach of Implied Warranty**

9      92.   Plaintiff incorporates by reference and realleges each
10 paragraph set forth above.
11     93.   Prior to the time that Decedent used Androgel, Defendants
12 impliedly warranted to Decedent and Decedent's agents and physicians that
13 Androgel was of merchantable quality and safe and fit for the use for which
14 it was intended.
15     94.   Decedent was and is unskilled in the research, design and
16 manufacture of the products such as Androgel and reasonably relied
17 entirely on the skill, judgment and implied warranty of the Defendants in
18 using Androgel.
19     95.   Androgel was neither safe for its intended use nor of
20 merchantable quality, as warranted by Defendants, in that Androgel has
21 dangerous propensities when used as intended and will cause severe
22 injuries to users.
23     96.   As a result of the abovementioned breach of implied
24 warranties by Defendants, Decedent and Plaintiff suffered injuries and
25 damages as alleged herein.

**Seventh Cause of Action**

**Breach of Express Warranty**

28     97.   Plaintiff incorporates by reference and realleges each
29 paragraph set forth above.
30     98.   At all times mentioned, Defendants expressly represented and
31 warranted to Decedent and Decedent's agents and physicians, by and
32 through statements made by Defendants or their authorized agents or sales
33 representatives, orally and in publications, package inserts and other written
34 materials intended for physicians, medical patients and the general public,
35 that Androgel is safe, effective, fit and proper for its intended use. Decedent
36 purchased Androgel relying on these warranties.
37     99.   In utilizing Androgel, Decedent relied on the skill, judgment,

15

representations, and foregoing express warranties of Defendants. These warranties and representations were false in that Androgel is unsafe and unfit for its intended uses.

100.    As a result of the abovementioned breach of express warranties by Defendants, Decedent and Plaintiff suffered injuries and damages as alleged herein.

**Eighth Cause of Action**

**Violation of California Consumers Legal Remedies Act**

101.    Plaintiff incorporates by reference and realleges each paragraph set forth above.

102.    This Complaint is filed and these proceedings are instituted pursuant to California Civil Code section 1750, *et seq.*, known as the California Consumers Legal Remedies Act ("CLRA"), to obtain injunctive relief and attorneys' fees from Defendants.

103.    Defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts within the meaning of CLRA including but not limited to the following:

      a.  Representing to Decedent, Decedent's physicians and the general public that Androgel was safe, fit and effective for all patients, knowing that said representations were false;

      b.  Concealing from Decedent, Decedent's physicians and the general public that Androgel had a serious propensity to cause injuries, and even death, to users;

      c.  Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the use of Androgel was safe, and had fewer side effects and adverse reactions than other options for treating symptoms of low testosterone, even though the Defendants knew these to be false, and/or had no reasonable grounds to believe them to be true;

      d.  Purposely downplaying and understating the health hazards and risks associated with Androgel.

104.    Defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts within the meaning of CLRA. Plaintiff demands that Defendants immediately cease the illegal conduct alleged herein.

105.    The illegal conduct alleged herein is continuing and there is

16

Complaint for Wrongful Death and Demand for Jury Trial

no indication that Defendants will refrain from such activity in the future.

106.   Pursuant to the CLRA, Plaintiff is entitled to injunctive relief and attorneys' fees.

### Ninth Cause of Action
### Violation of Business & Professions Code § 17200

107.   Plaintiff incorporates by reference and realleges each paragraph set forth above.

108.   Plaintiff brings this cause of action pursuant to California Business & Professions Code § 17204.

109.   California Business & Professions Code § 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising".

110.   The acts and practices described above were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of California Business & Professions Code § 17200. The acts of untrue and misleading advertising set forth in preceding paragraphs are incorporated by reference and are, by definition, violations of California Business & Professions Code § 17200. This conduct includes, but is not limited to:

      a. Representing to Decedent, Decedent's physicians, and the general public that Androgel was safe, fit, and effective for human consumption, knowing that said representations were false, and concealing from the Decedent, Decedent's physicians, and the general public that Androgel had a serious propensity to cause injuries to users;

      b. Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that Androgel was safe for human consumption and would not interfere with daily life, even though the Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true;

      c. Purposely downplaying and understating the health hazards and risks associated with Androgel;

      d. Issuing promotional literature and commercials deceiving potential users of Androgel by relaying positive information, including testimonials from satisfied users,

17

and manipulating statistics to suggest widespread
acceptability, while downplaying the known adverse and
serious health effects and concealing material relevant
information regarding the safety of Androgel.

111.  These practices constitute unlawful, unfair and fraudulent
business acts or practices, within the meaning of California Business &
Professions Code § 17200.

112.  The unlawful, unfair and fraudulent business practices of
Defendants described above present a continuing threat to members of the
public in that Defendants continue to engage in the conduct described
therein.

113.  As a result of their conduct described above, Defendants have
been and will be unjustly enriched. Specifically, Defendants have been
unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten
gains from the sale and prescription of Androgel in California, sold in large
part as a result of the acts and omissions described herein.

114.  Because of fraudulent misrepresentations made by
Defendants as detailed above, and the inherently unfair practice of
committing a fraud against the public by intentionally misrepresenting and
concealing material information, the acts of Defendants described herein
constitute unfair or fraudulent business practices.

115.  Plaintiff, pursuant to California Business & Professions Code
§ 17203, seeks an order of this court compelling the Defendants to provide
restitution and injunctive relief calling for Defendants, and each of them, to
cease unfair business practices in the future.

### Tenth Cause of Action
### Loss of Consortium

116.  Plaintiff incorporates by reference and realleges each
paragraph set forth above.

117.  As a direct and proximate result of Defendants' conduct,
Plaintiff has been deprived of love, society, companionship and services
and has otherwise suffered loss, the extent of which will be more fully
adduced at the trial of this matter.

### Eleventh Cause of Action
### Wrongful Death

118.  Plaintiff incorporates by reference and realleges each
paragraph set forth above.

18

119.   As a direct and proximate result of Defendants' negligence, carelessness and/or recklessness Decedent was injured in such a way as to cause his premature death.

120.   Furthermore, by reason of Decedent's death, Plaintiff has been permanently deprived of love, care, companionship, comfort, services, society, solace, affection, instruction, advice, training, guidance, protection, counsel, support, contributions, consortium, accumulations, inheritance and right of inheritance of Decedent, and has suffered grief and sorrow, all to her damage in an amount within the jurisdiction of this court, and according to proof.

## Twelfth Cause of Action

## Survival Action

121.   Plaintiff incorporates by reference and realleges each paragraph set forth above.

122.   Prior to his death, Decedent incurred substantial damages, and medical and/or hospital expenses as a direct and proximate result of the acts and/or omissions of the Defendants, and each of them, as herein alleged. The amount of those damages will be shown according to proof at the time of trial.

123.   A cause of action for recovery of such damages by Decedent's successors in interest survives their death pursuant to California Code of Civil Procedure 377.

124.   Defendants and each of them, acted in conscious disregard for the safety of Decedent with respect to matters alleged herein. Said disregard resulted in injuries and special damages, and warrants recovery of punitive damages by Decedent's successors in interest against Defendants.

## Prayer

Wherefore, Plaintiff prays for relief as follows:

1.   For an injunction prohibiting Defendants from engaging in conduct which violates the California Consumers Legal Remedies Act;

2.   For an injunction prohibiting Defendants from engaging in conduct which violates the California Business & Professions Code § 17200, et seq.;

3.   Special damages according to proof;

4.   General damages according to proof;

5.   Medical expenses, past and future, according to proof;

6.   Punitive damages;

19

Complaint for Wrongful Death and Demand for Jury Trial

7.     Pre- and post-judgment interest;

8.     Attorneys' fees, expenses, and costs; and

9.     Such further relief as this Court deems necessary, just, and proper.

Dated:  July 2, 2014

Respectfully submitted,

Albertson & Davidson, LLP

By: _____

Stewart R. Albertson, SBN 230841
3491 Concours, Suite 201
Ontario, California 91764
(909) 466-1711
(909) 354-3460 fax
stewart@aldavlaw.com

## Demand for Jury Trial

Plaintiff hereby demands a jury trial on all counts in this Complaint.

Dated:  July 2, 2014

Respectfully submitted,

Albertson & Davidson, LLP

By: _____

Stewart R. Albertson, SBN 230841
3491 Concours, Suite 201
Ontario, California 91764
(909) 466-1711
(909) 354-3460 fax
stewart@aldavlaw.com

Complaint for Wrongful Death and Demand for Jury Trial

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Stewart R. Albertson (SBN 230841)<br>Albertson & Davidson, LLP<br>3491 Concours, Suite 201<br>Ontario, California 91764<br>TELEPHONE NO.: (909) 466-1711    FAX NO.: (909) 354-3460<br>ATTORNEY FOR *(Name):*  Plaintiffs | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**07/07/2014** at 04:44:37 PM<br>Clerk of the Superior Court<br>By Robert Renison, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ORANGE**
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME: Calvillo v. AbbVie, Inc., et al

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| ☒ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2014-00732840-CU-PO-CJC |
| | | | JUDGE: Judge William Claster  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☒ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.☐ monetary  b.☒ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action *(specify):* Personal Injury / Product Liability
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: July 7, 2014
Stewart Albertson
_____
(TYPE OR PRINT NAME)                          ► _____
                                               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all**
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

CM-010 [Rev. July 1, 2007]

<strong>CIVIL CASE COVER SHEET</strong>

Page 2 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

## NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.**

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ORANGE

## ADR Information

**Introduction.**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

## BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

**Save Time.** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money.** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome.** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships.** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction.** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

**Improve Attorney-Client Relationships.** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

## DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

**Loss of protections.** If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

L1200 (Rev. February2008)                                                            Page 2 of 4

**Less discovery.** There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.** The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.** Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

**TYPES OF ADR IN CIVIL CASES.**

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.** In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

   **Cases for Which Arbitration May Be Appropriate.** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

   **Cases for Which Arbitration May Not Be Appropriate.** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.** In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

   **Cases for Which Mediation May Be Appropriate.** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

   **Cases for Which Mediation May Not Be Appropriate.** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.** In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate.** Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May <u>Not</u> Be Appropriate.** Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences.** Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

## ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the Yellow Pages under "Arbitrators" or "Mediators"

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA) For information regarding DRPA, contact:
- Institute for Conflict Management (714) 288-5600
- Community Service Programs, Inc. (949) 851-3168
- Orange County Human Relations (714) 834-7198
- Fair Housing Council of Orange County (714) 569-0827

For information on the Superior Court of California, County of Orange court ordered arbitration program, call (714) 834-3774 or refer to Local Rules 360 and 446.

The Orange County Superior Court is offering pilot programs for Civil Mediation and Early Neutral Evaluation (ENE) for civil cases filed at the Central Justice Center. For the Civil Mediation pilot program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) pilot programs is available on the Court's website at www.occourts.org, or by calling (714) 834-5309.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address)*: | FOR COURT USE ONLY |
|---|---|
| Telephone No.:                    Fax No. (Optional):<br>E-Mail Address (Optional):<br>ATTORNEY FOR *(Name)*:                    Bar No: | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>JUSTICE CENTER:<br>☑ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor-Laguna Hills Facility – 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251<br>☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500<br>☐ West – 8141 13ᵗʰ Street, Westminster, CA 92683-0500 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |

Plaintiff(s)/Petitioner(s), _____

_____

and defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐  Mediation

☐  Arbitration (must specify code)
               ☐ Under section 1141.11 of the Code of Civil Procedure
               ☐ Under section 1280 of the Code of Civil Procedure

☐  Neutral Case Evaluation

☐  Other (specify): _____

The ADR process must be completed no later than 90 days after the date of this Stipulation.

☐  Plaintiff(s)/Petitioner(s) and defendant(s)/respondent(s) further agree as follows:

_____

☐  The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals.  We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: _____     _____     _____
                           (SIGNATURE OF PLAINTIFF OR ATTORNEY)      (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____     _____     _____
                           (SIGNATURE OF DEFENDANT OR ATTORNEY)    (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

Approved for Optional Use                                 California Rules of Court, rule 3.221<br>L1270 (Rev February, 2008)



Abbott Litigation          100 Abbott Park Road          T (847) 936-1072

Jennifer Oosterbaan        Dept. 033C, Bldg. AP6A-2      F (847) 938-6235

Division Counsel           Abbott Park, IL 60064-6011

July 25, 2014

**<u>VIA PERSONAL SERVICE</u>**

AbbVie Inc.
1 North Waukegan Road
North Chicago, Illinois 60064
Attn: General Counsel
Facsimile: (847) 935-3294

Re: Notice of Third-Party Claim and Request for Indemnification
Pursuant to Separation and Distribution Agreement by and between
Abbott Laboratories and AbbVie Inc. dated as of November 28, 2012:
*Evelyn Calvillo v. AbbVie Inc. et al., Complaint, Superior Court of the
State of California for the County of Orange, Case No. 30-2014-
00732840-CU-PO-CJC.*

Dear Counsel:

Pursuant to Sections 4.02, 4.05 and 9.05 of the above referenced Separation
and Distribution Agreement (the "SDA"), Sections 9.01, 9.04 and 13.05 of the
Special Products Master Agreement (the "SPMA"), and Section 5.e of the Special
Products Specific Agreement for AndroGel®, we write to notify you that on July 25,
2014, CT Corporation, Abbott's registered agent, was served with the enclosed
Complaint. (See *Evelyn Calvillo v. AbbVie Inc. et al., Complaint, Superior Court
of the State of California for the County of Orange, Case No. 30-2014-00732840-
CU-PO-CJC).* Because this is a product liability lawsuit against Abbott
Laboratories, Inc. related to the commercialization of AndroGel®, this is an AbbVie
matter. The response is due within 21 days after the date of service.

Pursuant to Sections 4.02 and 4.05 of the aforementioned SDA and Sections
9.01 and 9.04 of the aforementioned SPMA, Abbott hereby provides this Notice of
the above-mentioned Third-Party Claim and requests indemnification from AbbVie
in connection with this matter. Under the terms of Section 4.05(b) of the SDA and
9.04(b) of the SPMA, we request Notice indicating whether AbbVie shall assume
responsibility for defending this claim and specifying any reservations or exceptions
to those defenses.



July 23, 2014
AbbVie, Inc.
Re: Calvillo / AndroGel

We look forward to your prompt attention to this matter.

Very truly yours,

*Jennifer Oosterbaan*/eme

Jennifer Oosterbaan
Division Counsel
Litigation
Abbott Laboratories

cc: AbbVie Inc. Vice President and Associate General Counsel, Litigation and Compliance (by email only)

JSO/lml

Encl.

**Abbott**
A Promise for Life

 **CT Corporation**

**Service of Process Transmittal**
07/24/2014
CT Log Number 525386919

TO: Christina Crum
Abbott Laboratories
Litigation AP6A-2/033C, 100 Abbott Park Road
Abbott Legal Division
North Chicago, IL 60064

RE: **Process Served in California**

FOR: Abbott Laboratories Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Evelyn Calvillo, Pltf. vs. Abbvie, Inc., et al. including Abbott Laboratories, Inc., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet, Instructions, Resolution, Information, Stipulation, Complaint |
| **COURT/AGENCY:** | Orange County - Superior Court - Santa Ana, CA Case # 30201400732840CUPOCJC |
| **NATURE OF ACTION:** | Wrongful Death - Defendant's negligence constitutes a breach including wrongful acts which cause plaintiff sustained serious injuries and damages including medical and funeral expenses, loss of earnings, pain, mental anguish and death, plaintiff seeking judgment for damages against defendant |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/24/2014 at 13:00 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after this summons is hereby served on you |
| **ATTORNEY(S) / SENDER(S):** | Stewart R. Albertson 3491 Concours, Suite 201 Ontario, CA 91764 909-466-1711 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/25/2014, Expected Purge Date: 07/30/2014 Image SOP Email Notification, Christina Crum christina.crum@abbott.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AbbVie, Inc.; Abbott Laboratories, Inc.; McKesson Corporation; and Does 1-100,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Evelyn Calvillo,

<table>
<tr><td><em>FOR COURT USE ONLY</em><br>(SOLO PARA USO DE LA CORTE)<br><br>ELECTRONICALLY FILED<br>Superior Court of California,<br>County of Orange<br><br>07/07/2014 at 04:44:37 PM<br>Clerk of the Superior Court<br>By Robert Renison, Deputy Clerk</td></tr>
</table>

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. ¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Orange County Superior Court<br>700 Civic Center Drive West<br>700 Civic Center Drive West<br>Santa Ana, CA 92701<br>Central Justice Center | **CASE NUMBER:**<br>*(Número del Caso):* 30-2014-00732840-CU-PO-CJC<br><br>Judge William Claster |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Albertson & Davidson, LLP  (909) 466-1711  Fax (909) 354-3460
Stewart R Albertson, SBN 230841
3491 Concours, Suite 201, Ontario, California 91764

| DATE: 07/07/2014 | ALAN CARLSON, Clerk of the Court | Clerk, by _____ a—a~ _____ , Deputy |
|---|---|---|
| *(Fecha)* | | *(Secretario)*   Robert Renison   *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Abbott Laboratories, Inc.

   under: ☑ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Stewart R. Albertson (SBN 230841)<br>Albertson & Davidson, LLP<br>3491 Concours, Suite 201<br>Ontario, California 91764<br>TELEPHONE NO.: (909) 466-1711      FAX NO.: (909) 354-3460<br>ATTORNEY FOR (Name): Plaintiffs | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**07/07/2014 at 04:44:37 PM**<br>Clerk of the Superior Court<br>By Robert Renison, Deputy Clerk |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ORANGE**
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME: Calvillo v. AbbVie, Inc., et al

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER:<br>30-2014-00732840-CU-PO-CJC |
|---|---|---|
| ☒ Unlimited    ☐ Limited<br>(Amount         (Amount<br>demanded       demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge William Claster<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☒ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. ☐ monetary  b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify): Personal Injury / Product Liability
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: July 7, 2014
Stewart Albertson
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

### NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

   (1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

   (2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

   (3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

   (4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ORANGE

## ADR Information

**Introduction.**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

## BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

**Save Time.** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money.** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome.** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships.** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction.** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

**Improve Attorney-Client Relationships.** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

## DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

**Loss of protections.** If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

**Less discovery.**  There generally is less opportunity to find out about the other side's case with ADR than with litigation.  ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.**  The neutral may charge a fee for his or her services.  If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.**  Lawsuits must be brought within specified periods of time, known as statues of limitation.  Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

**TYPES OF ADR IN CIVIL CASES.**

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.**  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

    **Cases for Which Arbitration May Be Appropriate.**  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

    **Cases for Which Arbitration May <u>Not</u> Be Appropriate.**  If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.**  In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

    **Cases for Which Mediation May Be Appropriate.**  Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

    **Cases for Which Mediation May <u>Not</u> Be Appropriate.**  Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.**  In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate.** Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate.** Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences.** Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

## ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the Yellow Pages under "Arbitrators" or "Mediators"

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA) For information regarding DRPA, contact:
- Institute for Conflict Management (714) 288-5600
- Community Service Programs, Inc. (949) 851-3168
- Orange County Human Relations (714) 834-7198
- Fair Housing Council of Orange County (714) 569-0827

For information on the Superior Court of California, County of Orange court ordered arbitration program, call (714) 834-3774 or refer to Local Rules 360 and 446.

The Orange County Superior Court is offering pilot programs for Civil Mediation and Early Neutral Evaluation (ENE) for civil cases filed at the Central Justice Center. For the Civil Mediation pilot program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) pilot programs is available on the Court's website at www.occourts.org, or by calling (714) 834-5309.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address)*: | *FOR COURT USE ONLY* |
|---|---|

Telephone No.:                                          Fax No. (Optional):
E-Mail Address (Optional):
ATTORNEY FOR *(Name)*:                                  Bar No:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
JUSTICE CENTER:
☑ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512
☐ Harbor-Laguna Hills Facility – 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251
☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500
☐ West – 8141 13ᵗʰ Street, Westminster, CA 92683-0500

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |
|---|---|

Plaintiff(s)/Petitioner(s),_____

_____

and defendant(s)/respondent(s),_____

_____

agree to the following dispute resolution process:

☐  Mediation

☐  Arbitration (must specify code)
   ☐ Under section 1141.11 of the Code of Civil Procedure
   ☐ Under section 1280 of the Code of Civil Procedure

☐  Neutral Case Evaluation

☐  Other (specify):_____

The ADR process must be completed no later than 90 days after the date of this Stipulation.

☐  Plaintiff(s)/Petitioner(s) and defendant(s)/respondent(s) further agree as follows:

   _____

☐  The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals.  We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date:_____          _____          _____
                             (SIGNATURE OF PLAINTIFF OR ATTORNEY)     (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:_____          _____          _____
                             (SIGNATURE OF DEFENDANT OR ATTORNEY)     (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

Approved for Optional Use                                California Rules of Court, rule 3.221
L1270 (Rev February, 2008)

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**07/07/2014** at 04:44:37 PM
Clerk of the Superior Court
By Robert Renison,Deputy Clerk

1  Stewart R. Albertson, SBN 230841
2  stewart@aldavlaw.com
3  Heather G. Cote, SBN 293368
4  hgreen@aldavlaw.com
   Albertson & Davidson, LLP
5  3491 Concours, Suite 201
6  Ontario, California 91764
7  (909) 466-1711
8  (909) 354-3460 fax

9  Attorneys for Plaintiff
10
11
12
13        **Superior Court of the State of California**
14              **For the County of Orange**
15
16  Evelyn Calvillo,                    Case No.: 30-2014-00732840-CU-PO-CJC
17                                         Judge William Claster
18         Plaintiff,             Complaint for Wrongful Death and
19                                Demand for Jury Trial
20
21         v.
22
23
24  AbbVie, Inc.; Abbott Laboratories, Inc.;
25  McKesson Corporation; and
26  Does 1-100,
27
         Defendants.
28
29
30
31
32
33
34
35
36
37

1

Complaint for Wrongful Death and Demand for Jury Trial

1        Plaintiff Evelyn Calvillo ("Plaintiff") alleges as follows:

2        **Introduction**

3      1.    This case involves the prescription drug AndroGel®
4 ("Androgel"), which, on information and belief, is manufactured, sold,
5 distributed, promoted, labeled, marketed, and advertised by Defendants,
6 and each of them.

7      2.    Androgel is used as a testosterone replacement therapy.
8 Defendants negligently and intentionally misrepresented that Androgel was
9 safe and effective, when in fact it was causing and contributing to serious
10 cardiovascular events, including, but not limited to, heart attacks, strokes,
11 pulmonary embolism, and deep vein thrombosis. Plaintiff's husband,
12 Samuel Calvillo ("Decedent"), used Androgel and died as a result.

13        **Parties and Jurisdiction**

14      3.    Plaintiff is the surviving spouse of Decedent, and is successor
15 in interest to causes of action of decedent. Plaintiff is also a resident of
16 Orange County. As an heir and successor in interest to Decedent, she is
17 entitled to, and hereby does, bring a wrongful death action.

18      4.    Defendant AbbVie, Inc. is a Delaware corporation with its
19 principal place of business at 1 North Waukegan Road, North Chicago,
20 Illinois 60064. At all times relevant, Defendant AbbVie, Inc., a
21 pharmaceutical company involved in researching, manufacturing, selling,
22 merchandising, advertising, promoting, labeling, analyzing, testing
23 distributing and marketing of pharmaceuticals for distribution, sale, and use
24 by the general public, including Androgel.

25      5.    At all times relevant, AbbVie, Inc. was and is authorized to
26 do business in the State of California and was and is engaged in substantial
27 commerce and business activity in the state of California and Orange
28 County. At all times relevant, Defendant AbbVie, Inc. was engaged in the
29 sale and marketing of pharmaceutical products including Androgel in the
30 State of California and Orange County. On information and belief,
31 Defendant AbbVie, Inc. maintains research facilities in the State of
32 California.

33      6.    Defendant AbbVie, Inc. includes any and all parents,
34 subsidiaries, affiliates, divisions, franchises, partners, joint venturers and
35 organizational units of any kind, their predecessors, successors and assigns
36 and their present officers, directors, employees, agents, representatives and
37 other persons acting on their behalf.

2

Complaint for Wrongful Death and Demand for Jury Trial

7.     Defendant Abbott Laboratories, Inc. is an Illinois corporation with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064. At all times relevant, Defendant Abbott Laboratories, Inc. a pharmaceutical company involved in researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing distributing and marketing of pharmaceuticals for distribution, sale, and use by the general public, including Androgel.

8.     At all times relevant, Abbott Laboratories, Inc. was and is authorized to do business in the State of California and was and is engaged in substantial commerce and business activity in the state of California and Orange County. At all times relevant, Abbott Laboratories, Inc. was engaged in the sale and marketing of pharmaceutical products including Androgel in the State of California and Orange County. On information and belief, Abbott Laboratories, Inc. maintains research facilities in the State of California.

9.     Defendant Abbott Laboratories, Inc. includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons acting on their behalf.

10.     Defendant McKesson is, and at all times material to this action was, a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business at One Post Street, San Francisco, California 94104. At all times relevant, Defendant McKesson was involved in distribution, sales and marketing of pharmaceutical products including Androgel in the United States of America, including the State of California and Orange County. On information and belief, as part of its involvement in the marketing, distribution and promotion of Androgel, Defendant McKesson printed promotional materials and inserts for Androgel and provided them to physicians in California, including Decedent's physician. On information and belief, Defendant McKesson labeled, described, advertised, promoted and purported to warn or inform users regarding the risks pertaining to Androgel.

11.     Defendant McKesson includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns

3

1  and their present officers, directors, employees, agents, representatives and
2  other persons acting on their behalf.
3      12.    Defendants AbbVie, Inc., Abbott Laboratories, Inc., and
4  McKesson have transacted and conducted business with the State of
5  California, have derived substantial revenue from goods and products used
6  in the State of California, have derived substantial revenue from interstate
7  commerce, and expected, or should have expected, their acts to have
8  consequences within the State of California. This Court has personal
9  jurisdiction over these Defendants.
10     13.    The true names and capacities, whether individual, corporate,
11  associate, or otherwise, of Defendants named herein as Does 1 through 100,
12  and each of them, are unknown to Plaintiff, who therefore, sues said
13  Defendants by such fictitious names.
14     14.    Plaintiff will ask leave to amend this Complaint to state said
15  Defendants' true identities and capacities when the same has been
16  ascertained.
17     15.    Plaintiff is informed and believes and based thereon alleges
18  that each of the Defendants designated herein as "Doe" took part in and
19  participated with the Defendants in all matters referred to herein and was in
20  some manner responsible for the injuries and losses suffered by Decedent
21  and Plaintiff.
22     16.    Plaintiff is informed and believes and based thereon alleges
23  that at all times herein mentioned each of the Defendants was the agent,
24  servant and/or employee or occupied other relationships with each of the
25  other named Defendants and at all times herein mentioned acted within the
26  course and scope of said agency and/or employment and/or other
27  relationship and each other Defendant has ratified, consented to, and
28  approved the acts of its agents, employees, and representatives, and that
29  each actively participated in, aided and abetted, or assisted one another in
30  the commission of the wrongdoing alleged in this Complaint.
31                      **Jurisdiction and Venue**
32     17.    The California Superior Court has jurisdiction over this action
33  pursuant to California Constitution Article VI, Section 10, which grants the
34  Superior Court "original jurisdiction in all causes except those given by
35  statute to other trial courts." The Statutes under which this action is brought
36  do not specify any other basis for jurisdiction.
37     18.    The California Superior Court has jurisdiction over all

4

Complaint for Wrongful Death and Demand for Jury Trial

1   Defendants because, based on information and belief, each is a corporation
2   and/or entity and/or person organized under the laws of the State of
3   California, a foreign corporation or association authorized to do business in
4   California and registered with the California Secretary of State or that has
5   sufficient minimum contacts in California, is a citizen of California, or
6   otherwise intentionally avails itself of the California market so as to render
7   the exercise of jurisdiction over it by the California courts consistent with
8   traditional notions of fair play and substantial justice.

9        19.    Furthermore Defendants AbbVie, Inc., Abbott Laboratories,
10  Inc., and McKesson have purposefully availed themselves of the benefits
11  and the protections of the laws within the State of California. Defendant
12  McKesson has its principle place of business within the State of California.
13  Defendants AbbVie, Inc., Abbott Laboratories, Inc., and McKesson have
14  had sufficient contact such that the exercise of jurisdiction would be
15  consistent with the traditional notions of fair play and substantial justice.

16       20.    Venue is proper in this court pursuant to California Code of
17  Civil Procedure Section 395 in that Plaintiff resides within Orange County
18  and Decedent suffered an injury in Orange County.

19                        **General Allegations**

20       21.    The pharmaceutical drug at issue in this litigation is
21  Androgel, a testosterone replacement therapy.

22       22.    At all relevant times, Defendants designed, researched,
23  manufactured, tested, advertised, promoted, marketed, sold and distributed
24  Androgel as a testosterone replacement therapy.

25       23.    Unimed Pharmaceuticals, Inc. originally developed Androgel
26  and sought FDA approval in 1999. Before the drug was approved by the
27  FDA in 2000, Solvay Pharmaceuticals Inc. acquired Unimed
28  Pharmaceuticals, Inc. and, subsequently, brought Androgel to market. In
29  2010, Defendant Abbott Laboratories, Inc. acquired Solvay's
30  pharmaceutical division, which included Androgel. In 2013, Abbott
31  Laboratories, Inc. created AbbVie, Inc., a company composed of Abbott
32  Laboratories, Inc.'s former proprietary pharmaceutical business, which
33  included Androgel.

34       24.    The FDA approved Androgel for the treatment of adult males
35  who have low or no testosterone. After the FDA approval, Defendants
36  widely advertised and marketed Androgel as safe and effective testosterone
37  replacement therapy.

5

1       25.    Androgel is a hydroalcoholic gel containing testosterone. It is

2    applied to the upper arms/shoulders or abdomen. The drug enters the body

3    through transdermal absorption.

4       26.    Defendants participated in advertising campaigns designed to

5    convince men that they suffered from low testosterone. Defendants

6    participated in national disease awareness media blitzes that purported to

7    educate male consumers about the signs of low testosterone. The national

8    marketing campaigns consisted of television advertisements, promotional

9    literature placed in healthcare providers' offices and distributed to potential

10    testosterone users, and online media. Defendant Abbott Laboratories, Inc.

11    reportedly spent approximately $80 million promoting Androgel in 2012

12    alone.

13       27.    Defendants' advertisements suggest that various symptoms

14    often associated with other conditions may be caused by low testosterone

15    and encourage men to discuss testosterone replacement therapy with their

16    doctors if they experienced any of the "symptoms" of low testosterone.

17    These "symptoms" include listlessness, increased body fat, and moodiness-

18    -all general symptoms that are often a result of aging, weight gain, or

19    lifestyle, rather than low testosterone.

20       28.    Defendants' advertising campaigns included and include the

21    unbranded website "IsItLowT.com" that purports to provide facts regarding

22    low testosterone, diagnosis tools, and recommendations and solutions for

23    treating the condition.

24       29.    Defendants published a quiz on their "IsItLowT" website

25    titled "Androgen Deficiency in Adult Males" (ADAM) or "Is it Low T?"

26    The website encourages consumers to take the quiz to find out whether

27    their symptoms could be caused by low testosterone levels. According to

28    the "Is it Low T?" quiz, the symptoms of "Low T" include being "sad or

29    grumpy," "experiencing deterioration in the ability to play sports," and

30    "falling asleep after dinner." See, *www.isitlowt.com/do-vou-have-low-t/low-*

31    *t-quiz.*

32       30.    The "Is it Low T?" quiz was developed by Dr. John Morley,

33    Director of Endocrinology and Geriatrics at the St. Louis University School

34    of Medicine, at the request of a Dutch pharmaceutical company Organon

35    BioSciences and, in exchange for a $40,000 grant to his university, Dr.

36    Morley was told to keep the survey brief and to "make it somewhat sexy."

37    In fact, according to Natasha Singer, *Selling that New-Man Feeling,* Nov.

23, 2013, N.Y. Times, Dr. Morley admitted that he drafted the survey in a bathroom in less than 30 minutes, scribbling the questions on toilet paper. Dr. Morley has "no trouble calling it a crappy questionnaire," and he has stated that the survey is "not ideal" as a tool for helping to determine whether an individual's symptoms are caused by low testosterone levels.

31.     The symptoms described in the "Is it Low T?" quiz can be caused by an abundance of factors, including the natural aging process.

32.     Defendants have also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed, and that conditions associated with normal aging could be caused by low testosterone levels.

33.     Defendants' marketing campaigns have been very successful, convincing millions of men that they need testosterone replacement therapy. As a result of Defendants' "disease mongering," as termed by Dr. Adriane Fugh-Berman of Georgetown University Medical Center, the number of individuals diagnosed with Low T has increased exponentially.

34.     In 1999, when Unimed Pharmaceuticals, Inc., one of the Defendants' predecessor companies, petitioned the FDA to approve Androgel, Unimed Pharmaceuticals, Inc. claimed that hypogonadism affected approximately "one million American men." The FDA approved Androgel in 2000, by which time Unimed Pharmaceuticals, Inc. had announced that the market for Androgel was "four to five million American men." Three years later, in 2003, the market for Androgel had increased to "up to 20 million men."

35.     While running their campaigns for the awareness of low testosterone as a disease, Defendants promoted and promote their testosterone products as easy to use topical testosterone replacement therapies.

36.     Defendants convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Defendants' promises of safety and ease. Although prescription testosterone replacement therapy had been available for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies.

37.     However, these men were enticed to take dangerous medication that carries no benefit because many, if not most, of these men did not suffer from any testosterone-related condition that required medical

7

Complaint for Wrongful Death and Demand for Jury Trial

1   intervention.

2       38.     A study published in the Journal of the American Medical
3   Association ("JAMA") in August 2013 entitled "Trends in Androgen
4   Prescribing in the United States, 2001-2011" indicated that many men who
5   get testosterone prescriptions have no evidence of hypogonadism. For
6   example, one third of men prescribed testosterone had a diagnosis of
7   fatigue, and one quarter of men did not even have their testosterone levels
8   tested before they received a testosterone prescription.

9       39.     The increase in the number of patients misdiagnosed with
10  hypogonadism as a result of Defendants' advertising efforts has resulted in
11  over $1.37 billion in annual sales of Androgel. Androgel is the top selling
12  androgen drug in the United States. According to Shannon Pettypiece, *Are*
13  *Testosterone Drugs the Next Viagra?,* Bloomberg Businessweek, May 10,
14  2012, estimates indicate that sales are expected to triple in the next few
15  years, bringing in over $5 billion by the year 2017.

16              **The Dangers of Testosterone Therapy**

17      40.     Testosterone therapies, including Androgel, are not safe
18  drugs, but products that cause life-threatening problems including blood
19  clots, strokes and heart attacks.

20      41.     There have been a number of studies suggesting that
21  testosterone in men increases the risk of serious side effects:

22          a.  In 2010, a New England Journal of Medicine study
23              entitled "Adverse Events Associated with Testosterone
24              Administration" was discontinued after an exceedingly
25              high number of men in the testosterone group suffered
26              adverse events.

27          b.  In November of 2013, a JAMA study entitled
28              "Association of Testosterone Therapy with Mortality,
29              Myocardial Infarction, and Stroke in Men with Low
30              Testosterone Levels" indicated that testosterone therapy
31              raised the risk of death, heart attack and stroke by about
32              30%.

33          c.  On January 29, 2014, a study was released in PLOS ONE
34              entitled "Increased Risk of Non-Fatal Myocardial
35              Infarction Following Testosterone Therapy Prescription in
36              Men." This study indicated that testosterone increases the
37              risk of heart attacks in men over sixty-five years old by

1               200% and in men younger than sixty-five with a previous

2               diagnosis of heart disease by up to 300%.

3       42.     Secondary exposure to testosterone can cause side effects in

4  others. In 2009, the FDA issued a black box warning for testosterone

5  prescriptions, advising patients of reported virilization in children who were

6  secondarily exposed to the gel. Testosterone may also cause physical

7  changes in women exposed to the drug and cause fetal damage with

8  pregnant women who come into secondary contact with testosterone.

9             **Defendants Misrepresented and Failed to**

10              **Warn of the Dangers of Androgel**

11      43.    Defendants' marketing strategy has been to aggressively

12  market and sell Androgel by misleading potential users about the

13  prevalence and symptoms of low testosterone. Defendants failed to protect

14  users from serious dangers that Defendants knew, or should have known,

15  can result from the use of Androgel.

16      44.    Defendants successfully marketed Androgel by undertaking

17  campaigns designed to create a consumer perception that low testosterone

18  is prevalent among U.S. men and that symptoms previously associated with

19  other physical and mental conditions, such as aging, stress, depression, and

20  lethargy were actually attributable to low testosterone. Defendants knew, or

21  should have known, these assertions to be false, and had no reasonable

22  grounds to believe them to be true.

23      45.    Defendants' advertising programs sought to create the image

24  and belief by consumers and their physicians that the use of Androgel was a

25  safe method of alleviating their symptoms, had few side effects and would

26  not interfere with their daily lives even though Defendants knew, or should

27  have known these assertions to be false, and had no reasonable grounds to

28  believe them to be true.

29      46.    Defendants purposefully downplayed, understated and

30  outright ignored the health hazards and risks associated with using

31  Androgel. Defendants deceived potential Androgel users by

32  overemphasizing and misrepresenting the prevalence and dangers of low

33  testosterone, while downplaying known adverse and serious health effects

34  of testosterone therapies, including Androgel.

35      47.    Defendants concealed materially relevant information from

36  potential testosterone users and minimized user and prescriber concern

37  regarding the safety of Androgel.

48.     In particular, in the warnings Defendants gave and give in their commercials, and online and print advertisements, Defendants had failed and fail to mention significant side effects of Androgel and had falsely represented and represent that Defendants have adequately tested it for all likely side effects.

49.     Defendants did not provide adequate warnings to Decedent's doctors, Decedent, Plaintiff, the healthcare community and the general public about the increased risk of serious adverse events that are described herein.

50.     The product warnings for Androgel in effect during the time period Decedent used Androgel were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert prescribing physicians and/or Decedent of the serious risks associated with this drug.

51.     As a result of Defendants' advertising and marketing, and representations about their products, men in the United States, including Decedent, pervasively sought out and seek out prescriptions for testosterone, including Androgel.

**Androgel Caused Decedent's Death**

52.     As a direct and proximate result of Defendants' conduct, Decedent's physician prescribed Androgel to Decedent, and Decedent used Androgel.

53.     In choosing to use Androgel, Decedent and Decedent's physician relied on claims made by Defendants that low testosterone is a disease that requires pharmaceutical drug treatment.

54.     In choosing to use Androgel, Decedent and Decedent's physician relied on claims made by Defendants that testosterone had been clinically shown to safely and effectively raise testosterone levels.

55.     Had Decedent and/or Decedent's physician been adequately warned of the potential life-threatening side effects of Androgel, Decedent would not have purchased or used Androgel.

56.     Decedent, a resident of the State of California, purchased Androgel from a pharmacy in California. On information and belief, Defendant McKesson was the distributor that supplied this pharmacy with the Androgel that Decedent purchased and used.

57.     As a result of using Androgel, Decedent died. Due to Decedent's death, Decedent's spouse (Plaintiff) has suffered loss of consortium damages arising therefrom.

10

**Discovery Rule & Fraudulent Concealment**

58.     The nature of Decedent's injuries and damages, and their relationship to Androgel, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiff, until a time less than two years before the filing of this Complaint.

59.     Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Decedent and Plaintiff the nature of Decedent's injury and the connection between Decedent's death and all Defendants' tortious conduct.

**No Federal Claims Pleaded**

60.     Plaintiff's claims in this action are brought solely under state law. Plaintiff does not herein bring, assert, or allege, either expressly or impliedly, any causes of action arising under any federal law, statute, regulation, or provision. Thus, there is no federal jurisdiction in this action on the basis of a federal question under 28 U.S.C. section 1331.

61.     Furthermore, federal diversity jurisdiction is lacking in this action. Complete diversity does not exist between the parties and therefore the federal courts lack jurisdiction under 28 U.S.C. section 1332.

**First Cause of Action**

**Strict Liability: Failure to Warn**

62.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

63.     Androgel was defective due to inadequate warnings or instruction for use, both prior to marketing and post-marketing. Defendants knew or should have known that Androgel created significant risks of serious bodily harm and death to consumers. Defendants failed to adequately warn consumers and their healthcare providers of such risks.

64.     Because of Defendants' failure to provide adequate warnings with their products, Decedent used Androgel, which the Defendants manufactured, designed, sold, supplied, marketed or otherwise introduced into the stream of commerce. Androgel is the legal cause of Decedent's death and Plaintiff's harm, damages and economic loss. Plaintiff will continue to suffer such harm, damages and economic loss in the future.

**Second Cause of Action**

**Negligence**

65.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

66. Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, sale and/or distribution of Androgel. In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily harm and adverse events.

67. Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, marketing, or distribution of Androgel in that they knew or should have known that Androgel could cause significant bodily harm or death and was not safe for use by certain types of consumers.

68. Defendants failed to exercise ordinary care in the labeling of Androgel and failed to issue to consumers and their healthcare providers adequate warnings concerning the risks of serious bodily injury or death due to the use of Androgel.

69. Despite the fact that Defendants knew or should have known that Androgel posed a serious risk of bodily harm to consumers, Defendants unreasonably continued to manufacture and market Androgel, and failed to exercise reasonable care with respect to post-sale warnings and instructions for safe use.

70. At all relevant times, it was foreseeable to Defendants that consumers like Decedent and Plaintiff would suffer injury as a result of their failure to exercise ordinary care as described above.

71. As a direct and proximate result of Defendants' negligence, Decedent died and Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**Third Cause of Action**

**Fraud**

72. Plaintiff incorporates by reference and realleges each paragraph set forth above.

73. On information and belief, Defendants knowingly and intentionally made materially false and misleading representations to Decedent's healthcare providers and to the public, to the effect that Androgel was safe for use and that their labeling, marketing and promotional materials fully described all known risks associated with their product.

74. On information and belief, Defendants' representations were

12

Complaint for Wrongful Death and Demand for Jury Trial

1   in fact false. Androgel is not safe for use and Defendants' labeling,
2   marketing and promotional materials did not fully describe all known risks
3   of the product.

4       75.    On information and belief, Defendants had actual knowledge
5   that Androgel created an unreasonable risk of serious bodily injury and
6   death to consumers, including the risk of the injury that Androgel caused in
7   Decedent.

8       76.    On information and belief, Defendants knowingly and
9   intentionally omitted this information from their labeling, marketing, and
10  promotional materials and instead labeled, promoted and marketed their
11  products as safe for use in order to increase and sustain sales.

12      77.    On information and belief, when Defendants made
13  representations that Androgel was safe for use, they knowingly and
14  intentionally concealed and withheld from Decedent, Decedent's physician
15  and the public, the fact that Androgel was not safe for use, and causes
16  serious side effects, including the injuries that Androgel caused in
17  Decedent.

18      78.    Defendants had a duty to fully disclose the risks associated
19  with Androgel use, including the risk of the injuries that Androgel caused
20  in Decedent. Defendants had superior knowledge of these facts that were
21  material to the decisions of Decedent and Decedent's healthcare providers
22  to use Androgel.

23      79.    Decedent and Decedent's healthcare providers reasonably and
24  justifiably relied on the Defendants' representations that Androgel was safe
25  for use and that Defendants' labeling, marketing and promotional materials
26  fully described all known risks associated with the product.

27      80.    Decedent did not know, and could not have learned of the
28  facts that the Defendants omitted and suppressed. The facts suppressed and
29  concealed by the Defendants are material. Had Decedent and Decedent's
30  healthcare providers known the truth concerning the risks associated with
31  Androgel use, Decedent would not have used Androgel.

32      81.    As a direct and proximate result of Defendants'
33  misrepresentations and concealment, Decedent was prescribed and used
34  Androgel, and due to Decedent's death, Plaintiff has suffered harm,
35  damages and economic loss and will continue to suffer such harm, damages
36  and economic loss in the future.

37      82.    The foregoing acts, conduct and omissions of Defendants

13

1   were vile, base, willful, malicious, wanton, oppressive and fraudulent, and
2   were done with a conscious disregard for the health, safety and rights of
3   Decedent and other users of Defendants' products, and for the primary
4   purpose of increasing Defendants' profits. As such, Plaintiff is entitled to
5   exemplary damages.

6                           **Fourth Cause of Action**
7       **Fraud: Concealment, Suppression or Omission of Material Facts**
8           83.    Plaintiff incorporates by reference and realleges each
9   paragraph set forth above.
10          84.    Defendants omitted, suppressed, or concealed material facts
11  concerning the dangers and risks associated with the use of Androgel,
12  including but not limited to the risks of the injuries that Androgel caused in
13  Decedent, and the fact that safer alternatives were available. Further,
14  Defendants purposely downplayed and understated the serious nature of the
15  risks associated with use of Androgel in order to increase and sustain sales.
16          85.    As a direct and proximate result of Defendants' concealment
17  of material facts, Decedent was prescribed and used Androgel and died.
18  Due to Decedent's death, Plaintiff has suffered harm, damages and
19  economic loss and will continue to suffer harm, damages and economic loss
20  in the future.
21          86.    The foregoing acts, conduct and omissions of Defendants
22  were vile, base, willful, malicious, wanton, oppressive and fraudulent, and
23  were done with a conscious disregard for the health, safety and rights of
24  Decedent and other users of Defendants' products, and for the primary
25  purpose of increasing Defendants' profits. As such Plaintiff is entitled to
26  exemplary damages.

27                           **Fifth Cause of Action**
28                        **Negligent Misrepresentation**
29          87.    Plaintiff incorporates by reference and realleges each
30  paragraph set forth above.
31          88.    On information and belief, Defendants supplied the public
32  and Decedent's healthcare providers with materially false and incomplete
33  information with respect to the safety of Androgel.
34          89.    In supplying this false information, Defendants failed to
35  exercise reasonable care.
36          90.    The false information communicated by Defendants to
37  Decedent and Decedent's healthcare providers was material, and Decedent

14

1   and Decedent's healthcare providers justifiably relied in good faith on the
2   information to Decedent's and Plaintiff's detriment.
3        91.     As a direct and proximate result of Defendants'
4   misrepresentations, Decedent was prescribed and used Androgel and died.
5   As a result, Plaintiff has suffered harm, damages and economic loss and
6   will continue to suffer such harm, damages and economic loss in the future.
7                        **Sixth Cause of Action**
8                   **Breach of Implied Warranty**
9        92.     Plaintiff incorporates by reference and realleges each
10  paragraph set forth above.
11       93.     Prior to the time that Decedent used Androgel, Defendants
12  impliedly warranted to Decedent and Decedent's agents and physicians that
13  Androgel was of merchantable quality and safe and fit for the use for which
14  it was intended.
15       94.     Decedent was and is unskilled in the research, design and
16  manufacture of the products such as Androgel and reasonably relied
17  entirely on the skill, judgment and implied warranty of the Defendants in
18  using Androgel.
19       95.     Androgel was neither safe for its intended use nor of
20  merchantable quality, as warranted by Defendants, in that Androgel has
21  dangerous propensities when used as intended and will cause severe
22  injuries to users.
23       96.     As a result of the abovementioned breach of implied
24  warranties by Defendants, Decedent and Plaintiff suffered injuries and
25  damages as alleged herein.
26                      **Seventh Cause of Action**
27                  **Breach of Express Warranty**
28       97.     Plaintiff incorporates by reference and realleges each
29  paragraph set forth above.
30       98.     At all times mentioned, Defendants expressly represented and
31  warranted to Decedent and Decedent's agents and physicians, by and
32  through statements made by Defendants or their authorized agents or sales
33  representatives, orally and in publications, package inserts and other written
34  materials intended for physicians, medical patients and the general public,
35  that Androgel is safe, effective, fit and proper for its intended use. Decedent
36  purchased Androgel relying on these warranties.
37       99.     In utilizing Androgel, Decedent relied on the skill, judgment,

15

Complaint for Wrongful Death and Demand for Jury Trial

representations, and foregoing express warranties of Defendants. These warranties and representations were false in that Androgel is unsafe and unfit for its intended uses.

100.   As a result of the abovementioned breach of express warranties by Defendants, Decedent and Plaintiff suffered injuries and damages as alleged herein.

**Eighth Cause of Action**

**Violation of California Consumers Legal Remedies Act**

101.   Plaintiff incorporates by reference and realleges each paragraph set forth above.

102.   This Complaint is filed and these proceedings are instituted pursuant to California Civil Code section 1750, *et seq.*, known as the California Consumers Legal Remedies Act ("CLRA"), to obtain injunctive relief and attorneys' fees from Defendants.

103.   Defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts within the meaning of CLRA including but not limited to the following:

    a.   Representing to Decedent, Decedent's physicians and the general public that Androgel was safe, fit and effective for all patients, knowing that said representations were false;

    b.   Concealing from Decedent, Decedent's physicians and the general public that Androgel had a serious propensity to cause injuries, and even death, to users;

    c.   Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the use of Androgel was safe, and had fewer side effects and adverse reactions than other options for treating symptoms of low testosterone, even though the Defendants knew these to be false, and/or had no reasonable grounds to believe them to be true;

    d.   Purposely downplaying and understating the health hazards and risks associated with Androgel.

104.   Defendants' acts and business practices constitute unlawful methods of competition and unfair or deceptive acts within the meaning of CLRA. Plaintiff demands that Defendants immediately cease the illegal conduct alleged herein.

105.   The illegal conduct alleged herein is continuing and there is

1    no indication that Defendants will refrain from such activity in the future.

2       106.   Pursuant to the CLRA, Plaintiff is entitled to injunctive relief

3    and attorneys' fees.

### Ninth Cause of Action

### Violation of Business & Professions Code § 17200

6       107.   Plaintiff incorporates by reference and realleges each

7    paragraph set forth above.

8       108.   Plaintiff brings this cause of action pursuant to California

9    Business & Professions Code § 17204.

10      109.   California Business & Professions Code § 17200 provides

11    that unfair competition shall mean and include "all unlawful, unfair or

12    fraudulent business practices and unfair, deceptive, untrue or misleading

13    advertising".

14      110.   The acts and practices described above were and are likely to

15    mislead the general public and therefore constitute unfair business practices

16    within the meaning of California Business & Professions Code § 17200.

17    The acts of untrue and misleading advertising set forth in preceding

18    paragraphs are incorporated by reference and are, by definition, violations

19    of California Business & Professions Code § 17200. This conduct includes,

20    but is not limited to:

21               a.  Representing to Decedent, Decedent's physicians, and the

22                   general public that Androgel was safe, fit, and effective

23                   for human consumption, knowing that said representations

24                   were false, and concealing from the Decedent, Decedent's

25                   physicians, and the general public that Androgel had a

26                   serious propensity to cause injuries to users;

27               b.  Engaging in advertising programs designed to create the

28                   image, impression and belief by consumers and physicians

29                   that Androgel was safe for human consumption and would

30                   not interfere with daily life, even though the Defendants

31                   knew these to be false, and even though the Defendants

32                   had no reasonable grounds to believe them to be true;

33               c.  Purposely downplaying and understating the health

34                   hazards and risks associated with Androgel;

35               d.  Issuing promotional literature and commercials deceiving

36                   potential users of Androgel by relaying positive

37                   information, including testimonials from satisfied users,

1    and manipulating statistics to suggest widespread
2    acceptability, while downplaying the known adverse and
3    serious health effects and concealing material relevant
4    information regarding the safety of Androgel.
5    111.   These practices constitute unlawful, unfair and fraudulent
6    business acts or practices, within the meaning of California Business &
7    Professions Code § 17200.
8    112.   The unlawful, unfair and fraudulent business practices of
9    Defendants described above present a continuing threat to members of the
10   public in that Defendants continue to engage in the conduct described
11   therein.
12   113.   As a result of their conduct described above, Defendants have
13   been and will be unjustly enriched. Specifically, Defendants have been
14   unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten
15   gains from the sale and prescription of Androgel in California, sold in large
16   part as a result of the acts and omissions described herein.
17   114.   Because of fraudulent misrepresentations made by
18   Defendants as detailed above, and the inherently unfair practice of
19   committing a fraud against the public by intentionally misrepresenting and
20   concealing material information, the acts of Defendants described herein
21   constitute unfair or fraudulent business practices.
22   115.   Plaintiff, pursuant to California Business & Professions Code
23   § 17203, seeks an order of this court compelling the Defendants to provide
24   restitution and injunctive relief calling for Defendants, and each of them, to
25   cease unfair business practices in the future.
26                    **Tenth Cause of Action**
27                     **Loss of Consortium**
28   116.   Plaintiff incorporates by reference and realleges each
29   paragraph set forth above.
30   117.   As a direct and proximate result of Defendants' conduct,
31   Plaintiff has been deprived of love, society, companionship and services
32   and has otherwise suffered loss, the extent of which will be more fully
33   adduced at the trial of this matter.
34                    **Eleventh Cause of Action**
35                     **Wrongful Death**
36   118.   Plaintiff incorporates by reference and realleges each
37   paragraph set forth above.

18

Complaint for Wrongful Death and Demand for Jury Trial

119.   As a direct and proximate result of Defendants' negligence, carelessness and/or recklessness Decedent was injured in such a way as to cause his premature death.

120.   Furthermore, by reason of Decedent's death, Plaintiff has been permanently deprived of love, care, companionship, comfort, services, society, solace, affection, instruction, advice, training, guidance, protection, counsel, support, contributions, consortium, accumulations, inheritance and right of inheritance of Decedent, and has suffered grief and sorrow, all to her damage in an amount within the jurisdiction of this court, and according to proof.

## Twelfth Cause of Action

## Survival Action

121.   Plaintiff incorporates by reference and realleges each paragraph set forth above.

122.   Prior to his death, Decedent incurred substantial damages, and medical and/or hospital expenses as a direct and proximate result of the acts and/or omissions of the Defendants, and each of them, as herein alleged. The amount of those damages will be shown according to proof at the time of trial.

123.   A cause of action for recovery of such damages by Decedent's successors in interest survives their death pursuant to California Code of Civil Procedure 377.

124.   Defendants and each of them, acted in conscious disregard for the safety of Decedent with respect to matters alleged herein. Said disregard resulted in injuries and special damages, and warrants recovery of punitive damages by Decedent's successors in interest against Defendants.

## Prayer

Wherefore, Plaintiff prays for relief as follows:

1.   For an injunction prohibiting Defendants from engaging in conduct which violates the California Consumers Legal Remedies Act;

2.   For an injunction prohibiting Defendants from engaging in conduct which violates the California Business & Professions Code § 17200, et seq.;

3.   Special damages according to proof;

4.   General damages according to proof;

5.   Medical expenses, past and future, according to proof;

6.   Punitive damages;

19

Complaint for Wrongful Death and Demand for Jury Trial

1      7.     Pre- and post-judgment interest;

2      8.     Attorneys' fees, expenses, and costs; and

3      9.     Such further relief as this Court deems necessary, just, and

4 proper.

5 Dated: July 2, 2014          Respectfully submitted,

6                        Albertson & Davidson, LLP

7

8                       By: _____

9                       Stewart R. Albertson, SBN 230841

10                     3491 Concours, Suite 201

11                     Ontario, California 91764

12                     (909) 466-1711

13                     (909) 354-3460 fax

                        stewart@aldavlaw.com

14

15                 **Demand for Jury Trial**

16    Plaintiff hereby demands a jury trial on all counts in this Complaint.

17 Dated: July 2, 2014        Respectfully submitted,

18                        Albertson & Davidson, LLP

19

20

21                       By: _____

22                       Stewart R. Albertson, SBN 230841

23                     3491 Concours, Suite 201

24                     Ontario, California 91764

25                     (909) 466-1711

26                     (909) 354-3460 fax

                        stewart@aldavlaw.com

27

28

29

30

31

32

33

34

35

36

37

Complaint for Wrongful Death and Demand for Jury Trial

 CT Corporation

**Service of Process Transmittal**
07/28/2014
CT Log Number 525404908

TO: Ellen Klaus
AbbVie Inc.
AP34-2, DV33C, 1 North Waukegan Road
North Chicago, IL 60064

RE: **Process Served in California**

FOR: AbbVie Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Evelyn Calvillo, Pltf. vs. AbbVie, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet, Instructions, Notice, Information, Stipulation, Complaint, Attachment(s) |
| **COURT/AGENCY:** | Superior Court of the State of California for the County of Orange, -, CA<br>Case # 30201400732840CUPOCJC |
| **NATURE OF ACTION:** | Wrongful Death - November 23, 2013 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/28/2014 at 10:39 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Stewart R. Albertson<br>3491 Concours<br>Suite 201<br>Ontario, CA 91764<br>909-466-1711 |
| **REMARKS:** | Please note the process server underlined and/or highlighted the entity being served prior to receipt by CT. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/29/2014, Expected Purge Date: 08/03/2014<br>Image SOP<br>Email Notification, Ellen Klaus ellen.klaus@abbvie.com<br>Email Notification, Ibia Malats ibia.malats@abbvie.com<br>Email Notification, Mary Graydon mary.graydon@abbvie.com<br>Email Notification, Tammy Maki tammy.maki@abbvie.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 555 Capitol Mall<br>Suite 1000<br>Sacramento, CA 95814 |
| **TELEPHONE:** | 916-497-0656 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**SUM-100**

# SUMMONS
## (CITACIÓN JUDICIAL)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
AbbVie, Inc.; Abbott Laboratories, Inc.; McKesson Corporation; and
Does 1-100,

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
Evelyn Calvillo,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**07/07/2014** at 04:44:37 PM
Clerk of the Superior Court
By Robert Renison, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | **CASE NUMBER:** |
|---|---|
| (El nombre y dirección de la corte es): | *(Número del Caso):* 30-2014-00732840-CU-PO-CJC |

Orange County Superior Court
700 Civic Center Drive West
700 Civic Center Drive West
Santa Ana, CA 92701
Central Justice Center

Judge William Claster

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Albertson & Davidson, LLP  (909) 466-1711  Fax (909) 354-3460
Stewart R Albertson, SBN 230841
3491 Concours, Suite 201, Ontario, California 91764

DATE: 07/07/2014     ALAN CARLSON, Clerk of the Court     Clerk, by _____, Deputy
(Fecha)     (Secretario)     Robert Renison     (Adjunto)

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☑ on behalf of (specify): AbbVie, Inc.
   under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | American LegalNet, Inc. | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|---|
| Judicial Council of California | | www.FormsWorkflow.com | www.courtinfo.ca.gov |
| SUM-100 [Rev. July 1, 2009] | | | |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Stewart R. Albertson (SBN 230841)<br>Albertson & Davidson, LLP<br>3491 Concours, Suite 201<br>Ontario, California 91764<br>TELEPHONE NO.: (909) 466-1711        FAX NO.: (909) 354-3460<br>ATTORNEY FOR *(Name):* Plaintiffs | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**07/07/2014** at 04:44:37 PM<br>Clerk of the Superior Court<br>By Robert Renison,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ORANGE**
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME: Calvillo v. AbbVie, Inc., et al

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| ☒ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ **Counter**   ☐ **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2014-00732840-CU-PO-CJC |
| | | | JUDGE: Judge William Claster |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☒ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☒ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.☐ monetary   b.☐ nonmonetary; declaratory or injunctive relief   c.☐ punitive

4. Number of causes of action *(specify):* Personal Injury / Product Liability

5. This case ☐ is   ☒ is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 7, 2014

Stewart Albertson
_____          ► _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF ORANGE

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):**

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.**

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ORANGE

## ADR Information

**Introduction.**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

**BENEFITS OF ADR.**

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

**Save Time.** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money.** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome.** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships.** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction.** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

**Improve Attorney-Client Relationships.** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

**DISADVANTAGES OF ADR.**

ADR may not be suitable for every dispute.

**Loss of protections.** If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

L1200 (Rev. February2008)                                                                 Page 2 of 4

**Less discovery.** There generally is less opportunity to find out about the other side's case with ADR than with litigation.   ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.** The neutral may charge a fee for his or her services.  If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.**  Lawsuits must be brought within specified periods of time, known as statues of limitation.  Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.**  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate.**  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> **Cases for Which Arbitration May <u>Not</u> Be Appropriate.**  If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.**  In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate.**  Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> **Cases for Which Mediation May <u>Not</u> Be Appropriate.**  Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.**  In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate.** Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May <u>Not</u> Be Appropriate.** Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences.** Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

**ADDITIONAL INFORMATION.**

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the Yellow Pages under "Arbitrators" or "Mediators"

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA) For information regarding DRPA, contact:
- Institute for Conflict Management (714) 288-5600
- Community Service Programs, Inc. (949) 851-3168
- Orange County Human Relations (714) 834-7198
- Fair Housing Council of Orange County (714) 569-0827

For information on the Superior Court of California, County of Orange court ordered arbitration program, call (714) 834-3774 or refer to Local Rules 360 and 446.

The Orange County Superior Court is offering pilot programs for Civil Mediation and Early Neutral Evaluation (ENE) for civil cases filed at the Central Justice Center. For the Civil Mediation pilot program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) pilot programs is available on the Court's website at www.occourts.org, or by calling (714) 834-5309.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address)*: | FOR COURT USE ONLY |
|---|---|

Telephone No.:                           Fax No. (Optional):
E-Mail Address (Optional):
ATTORNEY FOR *(Name)*:                          Bar No:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
JUSTICE CENTER:
☑ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512
☐ Harbor-Laguna Hills Facility – 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251
☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500
☐ West – 8141 13th Street, Westminster, CA 92683-0500

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |
|---|---|

Plaintiff(s)/Petitioner(s), _____

_____

and defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
    ☐ Under section 1141.11 of the Code of Civil Procedure
    ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

☐ Other (specify): _____

The ADR process must be completed no later than 90 days after the date of this Stipulation.

☐ Plaintiff(s)/Petitioner(s) and defendant(s)/respondent(s) further agree as follows:

    _____

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: _____

    (SIGNATURE OF PLAINTIFF OR ATTORNEY)    (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____

    (SIGNATURE OF DEFENDANT OR ATTORNEY)    (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

Approved for Optional Use                          California Rules of Court, rule 3.221
L1270 (Rev February, 2008)

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
**07/07/2014** at 04:44:37 PM
Clerk of the Superior Court
By Robert Renison,Deputy Clerk

1   Stewart R. Albertson, SBN 230841
2   stewart@aldavlaw.com
3   Heather G. Cote, SBN 293368
4   hgreen@aldavlaw.com
    Albertson & Davidson, LLP
5   3491 Concours, Suite 201
6   Ontario, California 91764
7   (909) 466-1711
8   (909) 354-3460 fax

9   Attorneys for Plaintiff

10

11

12

13               **Superior Court of the State of California**

14                    **For the County of Orange**

15

16   Evelyn Calvillo,                    Case No.:  30-2014-00732840-CU-PO-CJC
17                                                  Judge William Claster
18          Plaintiff,                   Complaint for Wrongful Death and
19                                        Demand for Jury Trial
20

21          v.

22

23

24   AbbVie, Inc.; Abbott Laboratories, Inc.;
25   McKesson Corporation; and
     Does 1-100,
26

27          Defendants.
28

29

30

31

32

33

34

35

36

37

---

1

1  Plaintiff Evelyn Calvillo ("Plaintiff") alleges as follows:

2  **Introduction**

3  1.  This case involves the prescription drug AndroGel®

4  ("Androgel"), which, on information and belief, is manufactured, sold,

5  distributed, promoted, labeled, marketed, and advertised by Defendants,

6  and each of them.

7  2.  Androgel is used as a testosterone replacement therapy.

8  Defendants negligently and intentionally misrepresented that Androgel was

9  safe and effective, when in fact it was causing and contributing to serious

10  cardiovascular events, including, but not limited to, heart attacks, strokes,

11  pulmonary embolism, and deep vein thrombosis. Plaintiff's husband,

12  Samuel Calvillo ("Decedent"), used Androgel and died as a result.

13  **Parties and Jurisdiction**

14  3.  Plaintiff is the surviving spouse of Decedent, and is successor

15  in interest to causes of action of decedent. Plaintiff is also a resident of

16  Orange County. As an heir and successor in interest to Decedent, she is

17  entitled to, and hereby does, bring a wrongful death action.

18  4.  Defendant AbbVie, Inc. is a Delaware corporation with its

19  principal place of business at 1 North Waukegan Road, North Chicago,

20  Illinois 60064. At all times relevant, Defendant AbbVie, Inc., a

21  pharmaceutical company involved in researching, manufacturing, selling,

22  merchandising, advertising, promoting, labeling, analyzing, testing

23  distributing and marketing of pharmaceuticals for distribution, sale, and use

24  by the general public, including Androgel.

25  5.  At all times relevant, AbbVie, Inc. was and is authorized to

26  do business in the State of California and was and is engaged in substantial

27  commerce and business activity in the state of California and Orange

28  County. At all times relevant, Defendant AbbVie, Inc. was engaged in the

29  sale and marketing of pharmaceutical products including Androgel in the

30  State of California and Orange County. On information and belief,

31  Defendant AbbVie, Inc. maintains research facilities in the State of

32  California.

33  6.  Defendant AbbVie, Inc. includes any and all parents,

34  subsidiaries, affiliates, divisions, franchises, partners, joint venturers and

35  organizational units of any kind, their predecessors, successors and assigns

36  and their present officers, directors, employees, agents, representatives and

37  other persons acting on their behalf.

2

Complaint for Wrongful Death and Demand for Jury Trial

7.     Defendant Abbott Laboratories, Inc. is an Illinois corporation with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064. At all times relevant, Defendant Abbott Laboratories, Inc. a pharmaceutical company involved in researching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing distributing and marketing of pharmaceuticals for distribution, sale, and use by the general public, including Androgel.

8.     At all times relevant, Abbott Laboratories, Inc. was and is authorized to do business in the State of California and was and is engaged in substantial commerce and business activity in the state of California and Orange County. At all times relevant, Abbott Laboratories, Inc. was engaged in the sale and marketing of pharmaceutical products including Androgel in the State of California and Orange County. On information and belief, Abbott Laboratories, Inc. maintains research facilities in the State of California.

9.     Defendant Abbott Laboratories, Inc. includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons acting on their behalf.

10.     Defendant McKesson is, and at all times material to this action was, a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business at One Post Street, San Francisco, California 94104. At all times relevant, Defendant McKesson was involved in distribution, sales and marketing of pharmaceutical products including Androgel in the United States of America, including the State of California and Orange County. On information and belief, as part of its involvement in the marketing, distribution and promotion of Androgel, Defendant McKesson printed promotional materials and inserts for Androgel and provided them to physicians in California, including Decedent's physician. On information and belief, Defendant McKesson labeled, described, advertised, promoted and purported to warn or inform users regarding the risks pertaining to Androgel.

11.     Defendant McKesson includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns

3

Complaint for Wrongful Death and Demand for Jury Trial

1  and their present officers, directors, employees, agents, representatives and

2  other persons acting on their behalf.

3      12.    Defendants AbbVie, Inc., Abbott Laboratories, Inc., and

4  McKesson have transacted and conducted business with the State of

5  California, have derived substantial revenue from goods and products used

6  in the State of California, have derived substantial revenue from interstate

7  commerce, and expected, or should have expected, their acts to have

8  consequences within the State of California. This Court has personal

9  jurisdiction over these Defendants.

10     13.    The true names and capacities, whether individual, corporate,

11  associate, or otherwise, of Defendants named herein as Does 1 through 100,

12  and each of them, are unknown to Plaintiff, who therefore, sues said

13  Defendants by such fictitious names.

14     14.    Plaintiff will ask leave to amend this Complaint to state said

15  Defendants' true identities and capacities when the same has been

16  ascertained.

17     15.    Plaintiff is informed and believes and based thereon alleges

18  that each of the Defendants designated herein as "Doe" took part in and

19  participated with the Defendants in all matters referred to herein and was in

20  some manner responsible for the injuries and losses suffered by Decedent

21  and Plaintiff.

22     16.    Plaintiff is informed and believes and based thereon alleges

23  that at all times herein mentioned each of the Defendants was the agent,

24  servant and/or employee or occupied other relationships with each of the

25  other named Defendants and at all times herein mentioned acted within the

26  course and scope of said agency and/or employment and/or other

27  relationship and each other Defendant has ratified, consented to, and

28  approved the acts of its agents, employees, and representatives, and that

29  each actively participated in, aided and abetted, or assisted one another in

30  the commission of the wrongdoing alleged in this Complaint.

31                **Jurisdiction and Venue**

32     17.    The California Superior Court has jurisdiction over this action

33  pursuant to California Constitution Article VI, Section 10, which grants the

34  Superior Court "original jurisdiction in all causes except those given by

35  statute to other trial courts." The Statutes under which this action is brought

36  do not specify any other basis for jurisdiction.

37     18.    The California Superior Court has jurisdiction over all

4

Complaint for Wrongful Death and Demand for Jury Trial

1  Defendants because, based on information and belief, each is a corporation
2  and/or entity and/or person organized under the laws of the State of
3  California, a foreign corporation or association authorized to do business in
4  California and registered with the California Secretary of State or that has
5  sufficient minimum contacts in California, is a citizen of California, or
6  otherwise intentionally avails itself of the California market so as to render
7  the exercise of jurisdiction over it by the California courts consistent with
8  traditional notions of fair play and substantial justice.

9      19.    Furthermore Defendants AbbVie, Inc., Abbott Laboratories,
10  Inc., and McKesson have purposefully availed themselves of the benefits
11  and the protections of the laws within the State of California. Defendant
12  McKesson has its principle place of business within the State of California.
13  Defendants AbbVie, Inc., Abbott Laboratories, Inc., and McKesson have
14  had sufficient contact such that the exercise of jurisdiction would be
15  consistent with the traditional notions of fair play and substantial justice.

16      20.    Venue is proper in this court pursuant to California Code of
17  Civil Procedure Section 395 in that Plaintiff resides within Orange County
18  and Decedent suffered an injury in Orange County.

19                     **General Allegations**

20      21.    The pharmaceutical drug at issue in this litigation is
21  Androgel, a testosterone replacement therapy.

22      22.    At all relevant times, Defendants designed, researched,
23  manufactured, tested, advertised, promoted, marketed, sold and distributed
24  Androgel as a testosterone replacement therapy.

25      23.    Unimed Pharmaceuticals, Inc. originally developed Androgel
26  and sought FDA approval in 1999. Before the drug was approved by the
27  FDA in 2000, Solvay Pharmaceuticals Inc. acquired Unimed
28  Pharmaceuticals, Inc. and, subsequently, brought Androgel to market. In
29  2010, Defendant Abbott Laboratories, Inc. acquired Solvay's
30  pharmaceutical division, which included Androgel. In 2013, Abbott
31  Laboratories, Inc. created AbbVie, Inc., a company composed of Abbott
32  Laboratories, Inc.'s former proprietary pharmaceutical business, which
33  included Androgel.

34      24.    The FDA approved Androgel for the treatment of adult males
35  who have low or no testosterone. After the FDA approval, Defendants
36  widely advertised and marketed Androgel as safe and effective testosterone
37  replacement therapy.

5

25.     Androgel is a hydroalcoholic gel containing testosterone. It is applied to the upper arms/shoulders or abdomen. The drug enters the body through transdermal absorption.

26.     Defendants participated in advertising campaigns designed to convince men that they suffered from low testosterone. Defendants participated in national disease awareness media blitzes that purported to educate male consumers about the signs of low testosterone. The national marketing campaigns consisted of television advertisements, promotional literature placed in healthcare providers' offices and distributed to potential testosterone users, and online media. Defendant Abbott Laboratories, Inc. reportedly spent approximately $80 million promoting Androgel in 2012 alone.

27.     Defendants' advertisements suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone. These "symptoms" include listlessness, increased body fat, and moodiness--all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

28.     Defendants' advertising campaigns included and include the unbranded website "IsItLowT.com" that purports to provide facts regarding low testosterone, diagnosis tools, and recommendations and solutions for treating the condition.

29.     Defendants published a quiz on their "IsItLowT" website titled "Androgen Deficiency in Adult Males" (ADAM) or "Is it Low T?" The website encourages consumers to take the quiz to find out whether their symptoms could be caused by low testosterone levels. According to the "Is it Low T?" quiz, the symptoms of "Low T" include being "sad or grumpy," "experiencing deterioration in the ability to play sports," and "falling asleep after dinner." See, *www.isitlowt.com/do-you-have-low-t/low-t-quiz*.

30.     The "Is it Low T?" quiz was developed by Dr. John Morley, Director of Endocrinology and Geriatrics at the St. Louis University School of Medicine, at the request of a Dutch pharmaceutical company Organon BioSciences and, in exchange for a $40,000 grant to his university, Dr. Morley was told to keep the survey brief and to "make it somewhat sexy." In fact, according to Natasha Singer, *Selling that New-Man Feeling*, Nov.

1   23, 2013, N.Y. Times, Dr. Morley admitted that he drafted the survey in a
2   bathroom in less than 30 minutes, scribbling the questions on toilet paper.
3   Dr. Morley has "no trouble calling it a crappy questionnaire," and he has
4   stated that the survey is "not ideal" as a tool for helping to determine
5   whether an individual's symptoms are caused by low testosterone levels.
6       31.     The symptoms described in the "Is it Low T?" quiz can be
7   caused by an abundance of factors, including the natural aging process.
8       32.     Defendants have also sought to convince primary care
9   physicians that low testosterone levels are widely under-diagnosed, and that
10  conditions associated with normal aging could be caused by low
11  testosterone levels.
12      33.     Defendants' marketing campaigns have been very successful,
13  convincing millions of men that they need testosterone replacement
14  therapy. As a result of Defendants' "disease mongering," as termed by Dr.
15  Adriane Fugh-Berman of Georgetown University Medical Center, the
16  number of individuals diagnosed with Low T has increased exponentially.
17      34.     In 1999, when Unimed Pharmaceuticals, Inc., one of the
18  Defendants' predecessor companies, petitioned the FDA to approve
19  Androgel, Unimed Pharmaceuticals, Inc. claimed that hypogonadism
20  affected approximately "one million American men." The FDA approved
21  Androgel in 2000, by which time Unimed Pharmaceuticals, Inc. had
22  announced that the market for Androgel was "four to five million American
23  men." Three years later, in 2003, the market for Androgel had increased to
24  "up to 20 million men."
25      35.     While running their campaigns for the awareness of low
26  testosterone as a disease, Defendants promoted and promote their
27  testosterone products as easy to use topical testosterone replacement
28  therapies.
29      36.     Defendants convinced millions of men to discuss testosterone
30  replacement therapy with their doctors, and consumers and their physicians
31  relied on Defendants' promises of safety and ease. Although prescription
32  testosterone replacement therapy had been available for years, millions of
33  men who had never been prescribed testosterone flocked to their doctors
34  and pharmacies.
35      37.     However, these men were enticed to take dangerous
36  medication that carries no benefit because many, if not most, of these men
37  did not suffer from any testosterone-related condition that required medical

7

Complaint for Wrongful Death and Demand for Jury Trial

intervention.

38.    A study published in the Journal of the American Medical Association ("JAMA") in August 2013 entitled "Trends in Androgen Prescribing in the United States, 2001-2011" indicated that many men who get testosterone prescriptions have no evidence of hypogonadism. For example, one third of men prescribed testosterone had a diagnosis of fatigue, and one quarter of men did not even have their testosterone levels tested before they received a testosterone prescription.

39.    The increase in the number of patients misdiagnosed with hypogonadism as a result of Defendants' advertising efforts has resulted in over $1.37 billion in annual sales of Androgel. Androgel is the top selling androgen drug in the United States. According to Shannon Pettypiece, *Are Testosterone Drugs the Next Viagra?,* Bloomberg Businessweek, May 10, 2012, estimates indicate that sales are expected to triple in the next few years, bringing in over $5 billion by the year 2017.

### The Dangers of Testosterone Therapy

40.    Testosterone therapies, including Androgel, are not safe drugs, but products that cause life-threatening problems including blood clots, strokes and heart attacks.

41.    There have been a number of studies suggesting that testosterone in men increases the risk of serious side effects:

a.  In 2010, a New England Journal of Medicine study entitled "Adverse Events Associated with Testosterone Administration" was discontinued after an exceedingly high number of men in the testosterone group suffered adverse events.

b.  In November of 2013, a JAMA study entitled "Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels" indicated that testosterone therapy raised the risk of death, heart attack and stroke by about 30%.

c.  On January 29, 2014, a study was released in PLOS ONE entitled "Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men." This study indicated that testosterone increases the risk of heart attacks in men over sixty-five years old by

8

1      200% and in men younger than sixty-five with a previous

2      diagnosis of heart disease by up to 300%.

3    42.    Secondary exposure to testosterone can cause side effects in

4  others. In 2009, the FDA issued a black box warning for testosterone

5  prescriptions, advising patients of reported virilization in children who were

6  secondarily exposed to the gel. Testosterone may also cause physical

7  changes in women exposed to the drug and cause fetal damage with

8  pregnant women who come into secondary contact with testosterone.

**Defendants Misrepresented and Failed to**

**Warn of the Dangers of Androgel**

11    43.    Defendants' marketing strategy has been to aggressively

12  market and sell Androgel by misleading potential users about the

13  prevalence and symptoms of low testosterone. Defendants failed to protect

14  users from serious dangers that Defendants knew, or should have known,

15  can result from the use of Androgel.

16    44.    Defendants successfully marketed Androgel by undertaking

17  campaigns designed to create a consumer perception that low testosterone

18  is prevalent among U.S. men and that symptoms previously associated with

19  other physical and mental conditions, such as aging, stress, depression, and

20  lethargy were actually attributable to low testosterone. Defendants knew, or

21  should have known, these assertions to be false, and had no reasonable

22  grounds to believe them to be true.

23    45.    Defendants' advertising programs sought to create the image

24  and belief by consumers and their physicians that the use of Androgel was a

25  safe method of alleviating their symptoms, had few side effects and would

26  not interfere with their daily lives even though Defendants knew, or should

27  have known these assertions to be false, and had no reasonable grounds to

28  believe them to be true.

29    46.    Defendants purposefully downplayed, understated and

30  outright ignored the health hazards and risks associated with using

31  Androgel. Defendants deceived potential Androgel users by

32  overemphasizing and misrepresenting the prevalence and dangers of low

33  testosterone, while downplaying known adverse and serious health effects

34  of testosterone therapies, including Androgel.

35    47.    Defendants concealed materially relevant information from

36  potential testosterone users and minimized user and prescriber concern

37  regarding the safety of Androgel.

9

Complaint for Wrongful Death and Demand for Jury Trial

48.     In particular, in the warnings Defendants gave and give in their commercials, and online and print advertisements, Defendants had failed and fail to mention significant side effects of Androgel and had falsely represented and represent that Defendants have adequately tested it for all likely side effects.

49.     Defendants did not provide adequate warnings to Decedent's doctors, Decedent, Plaintiff, the healthcare community and the general public about the increased risk of serious adverse events that are described herein.

50.     The product warnings for Androgel in effect during the time period Decedent used Androgel were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert prescribing physicians and/or Decedent of the serious risks associated with this drug.

51.     As a result of Defendants' advertising and marketing, and representations about their products, men in the United States, including Decedent, pervasively sought out and seek out prescriptions for testosterone, including Androgel.

**Androgel Caused Decedent's Death**

52.     As a direct and proximate result of Defendants' conduct, Decedent's physician prescribed Androgel to Decedent, and Decedent used Androgel.

53.     In choosing to use Androgel, Decedent and Decedent's physician relied on claims made by Defendants that low testosterone is a disease that requires pharmaceutical drug treatment.

54.     In choosing to use Androgel, Decedent and Decedent's physician relied on claims made by Defendants that testosterone had been clinically shown to safely and effectively raise testosterone levels.

55.     Had Decedent and/or Decedent's physician been adequately warned of the potential life-threatening side effects of Androgel, Decedent would not have purchased or used Androgel.

56.     Decedent, a resident of the State of California, purchased Androgel from a pharmacy in California. On information and belief, Defendant McKesson was the distributor that supplied this pharmacy with the Androgel that Decedent purchased and used.

57.     As a result of using Androgel, Decedent died. Due to Decedent's death, Decedent's spouse (Plaintiff) has suffered loss of consortium damages arising therefrom.

10

Complaint for Wrongful Death and Demand for Jury Trial

### Discovery Rule & Fraudulent Concealment

58.     The nature of Decedent's injuries and damages, and their relationship to Androgel, was not discovered, and through reasonable care and due diligence could not have been discovered, by Plaintiff, until a time less than two years before the filing of this Complaint.

59.     Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Decedent and Plaintiff the nature of Decedent's injury and the connection between Decedent's death and all Defendants' tortious conduct.

### No Federal Claims Pleaded

60.     Plaintiff's claims in this action are brought solely under state law. Plaintiff does not herein bring, assert, or allege, either expressly or impliedly, any causes of action arising under any federal law, statute, regulation, or provision. Thus, there is no federal jurisdiction in this action on the basis of a federal question under 28 U.S.C. section 1331.

61.     Furthermore, federal diversity jurisdiction is lacking in this action. Complete diversity does not exist between the parties and therefore the federal courts lack jurisdiction under 28 U.S.C. section 1332.

### First Cause of Action

### Strict Liability: Failure to Warn

62.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

63.     Androgel was defective due to inadequate warnings or instruction for use, both prior to marketing and post-marketing. Defendants knew or should have known that Androgel created significant risks of serious bodily harm and death to consumers. Defendants failed to adequately warn consumers and their healthcare providers of such risks.

64.     Because of Defendants' failure to provide adequate warnings with their products, Decedent used Androgel, which the Defendants manufactured, designed, sold, supplied, marketed or otherwise introduced into the stream of commerce. Androgel is the legal cause of Decedent's death and Plaintiff's harm, damages and economic loss. Plaintiff will continue to suffer such harm, damages and economic loss in the future.

### Second Cause of Action

### Negligence

65.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

11

Complaint for Wrongful Death and Demand for Jury Trial

66.     Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, sale and/or distribution of Androgel. In particular, they had a duty to assure that their products did not pose an unreasonable risk of bodily harm and adverse events.

67.     Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, marketing, or distribution of Androgel in that they knew or should have known that Androgel could cause significant bodily harm or death and was not safe for use by certain types of consumers.

68.     Defendants failed to exercise ordinary care in the labeling of Androgel and failed to issue to consumers and their healthcare providers adequate warnings concerning the risks of serious bodily injury or death due to the use of Androgel.

69.     Despite the fact that Defendants knew or should have known that Androgel posed a serious risk of bodily harm to consumers, Defendants unreasonably continued to manufacture and market Androgel, and failed to exercise reasonable care with respect to post-sale warnings and instructions for safe use.

70.     At all relevant times, it was foreseeable to Defendants that consumers like Decedent and Plaintiff would suffer injury as a result of their failure to exercise ordinary care as described above.

71.     As a direct and proximate result of Defendants' negligence, Decedent died and Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

### Third Cause of Action
### Fraud

72.     Plaintiff incorporates by reference and realleges each paragraph set forth above.

73.     On information and belief, Defendants knowingly and intentionally made materially false and misleading representations to Decedent's healthcare providers and to the public, to the effect that Androgel was safe for use and that their labeling, marketing and promotional materials fully described all known risks associated with their product.

74.     On information and belief, Defendants' representations were

12

1  in fact false. Androgel is not safe for use and Defendants' labeling,
2  marketing and promotional materials did not fully describe all known risks
3  of the product.

4      75.    On information and belief, Defendants had actual knowledge
5  that Androgel created an unreasonable risk of serious bodily injury and
6  death to consumers, including the risk of the injury that Androgel caused in
7  Decedent.

8      76.    On information and belief, Defendants knowingly and
9  intentionally omitted this information from their labeling, marketing, and
10 promotional materials and instead labeled, promoted and marketed their
11 products as safe for use in order to increase and sustain sales.

12     77.    On information and belief, when Defendants made
13 representations that Androgel was safe for use, they knowingly and
14 intentionally concealed and withheld from Decedent, Decedent's physician
15 and the public, the fact that Androgel was not safe for use, and causes
16 serious side effects, including the injuries that Androgel caused in
17 Decedent.

18     78.    Defendants had a duty to fully disclose the risks associated
19 with Androgel use, including the risk of the injuries that Androgel caused
20 in Decedent. Defendants had superior knowledge of these facts that were
21 material to the decisions of Decedent and Decedent's healthcare providers
22 to use Androgel.

23     79.    Decedent and Decedent's healthcare providers reasonably and
24 justifiably relied on the Defendants' representations that Androgel was safe
25 for use and that Defendants' labeling, marketing and promotional materials
26 fully described all known risks associated with the product.

27     80.    Decedent did not know, and could not have learned of the
28 facts that the Defendants omitted and suppressed. The facts suppressed and
29 concealed by the Defendants are material. Had Decedent and Decedent's
30 healthcare providers known the truth concerning the risks associated with
31 Androgel use, Decedent would not have used Androgel.

32     81.    As a direct and proximate result of Defendants'
33 misrepresentations and concealment, Decedent was prescribed and used
34 Androgel, and due to Decedent's death, Plaintiff has suffered harm,
35 damages and economic loss and will continue to suffer such harm, damages
36 and economic loss in the future.

37     82.    The foregoing acts, conduct and omissions of Defendants

1  were vile, base, willful, malicious, wanton, oppressive and fraudulent, and
2  were done with a conscious disregard for the health, safety and rights of
3  Decedent and other users of Defendants' products, and for the primary
4  purpose of increasing Defendants' profits. As such, Plaintiff is entitled to
5  exemplary damages.

6                         **Fourth Cause of Action**
7     **Fraud: Concealment, Suppression or Omission of Material Facts**
8        83.    Plaintiff incorporates by reference and realleges each
9  paragraph set forth above.
10       84.    Defendants omitted, suppressed, or concealed material facts
11 concerning the dangers and risks associated with the use of Androgel,
12 including but not limited to the risks of the injuries that Androgel caused in
13 Decedent, and the fact that safer alternatives were available. Further,
14 Defendants purposely downplayed and understated the serious nature of the
15 risks associated with use of Androgel in order to increase and sustain sales.
16       85.    As a direct and proximate result of Defendants' concealment
17 of material facts, Decedent was prescribed and used Androgel and died.
18 Due to Decedent's death, Plaintiff has suffered harm, damages and
19 economic loss and will continue to suffer harm, damages and economic loss
20 in the future.
21       86.    The foregoing acts, conduct and omissions of Defendants
22 were vile, base, willful, malicious, wanton, oppressive and fraudulent, and
23 were done with a conscious disregard for the health, safety and rights of
24 Decedent and other users of Defendants' products, and for the primary
25 purpose of increasing Defendants' profits. As such Plaintiff is entitled to
26 exemplary damages.

27                         **Fifth Cause of Action**
28                     **Negligent Misrepresentation**
29       87.    Plaintiff incorporates by reference and realleges each
30 paragraph set forth above.
31       88.    On information and belief, Defendants supplied the public
32 and Decedent's healthcare providers with materially false and incomplete
33 information with respect to the safety of Androgel.
34       89.    In supplying this false information, Defendants failed to
35 exercise reasonable care.
36       90.    The false information communicated by Defendants to
37 Decedent and Decedent's healthcare providers was material, and Decedent

                                   14

1   and Decedent's healthcare providers justifiably relied in good faith on the
2   information to Decedent's and Plaintiff's detriment.
3       91.    As a direct and proximate result of Defendants'
4   misrepresentations, Decedent was prescribed and used Androgel and died.
5   As a result, Plaintiff has suffered harm, damages and economic loss and
6   will continue to suffer such harm, damages and economic loss in the future.

7                        **Sixth Cause of Action**
8                      **Breach of Implied Warranty**

9       92.    Plaintiff incorporates by reference and realleges each
10  paragraph set forth above.
11      93.    Prior to the time that Decedent used Androgel, Defendants
12  impliedly warranted to Decedent and Decedent's agents and physicians that
13  Androgel was of merchantable quality and safe and fit for the use for which
14  it was intended.
15      94.    Decedent was and is unskilled in the research, design and
16  manufacture of the products such as Androgel and reasonably relied
17  entirely on the skill, judgment and implied warranty of the Defendants in
18  using Androgel.
19      95.    Androgel was neither safe for its intended use nor of
20  merchantable quality, as warranted by Defendants, in that Androgel has
21  dangerous propensities when used as intended and will cause severe
22  injuries to users.
23      96.    As a result of the abovementioned breach of implied
24  warranties by Defendants, Decedent and Plaintiff suffered injuries and
25  damages as alleged herein.

26                     **Seventh Cause of Action**
27                     **Breach of Express Warranty**

28      97.    Plaintiff incorporates by reference and realleges each
29  paragraph set forth above.
30      98.    At all times mentioned, Defendants expressly represented and
31  warranted to Decedent and Decedent's agents and physicians, by and
32  through statements made by Defendants or their authorized agents or sales
33  representatives, orally and in publications, package inserts and other written
34  materials intended for physicians, medical patients and the general public,
35  that Androgel is safe, effective, fit and proper for its intended use. Decedent
36  purchased Androgel relying on these warranties.
37      99.    In utilizing Androgel, Decedent relied on the skill, judgment,

1  representations, and foregoing express warranties of Defendants. These
2  warranties and representations were false in that Androgel is unsafe and
3  unfit for its intended uses.

4      100.   As a result of the abovementioned breach of express
5  warranties by Defendants, Decedent and Plaintiff suffered injuries and
6  damages as alleged herein.

7                    **Eighth Cause of Action**
8      **Violation of California Consumers Legal Remedies Act**

9      101.   Plaintiff incorporates by reference and realleges each
10  paragraph set forth above.

11      102.   This Complaint is filed and these proceedings are instituted
12  pursuant to California Civil Code section 1750, *et seq.,* known as the
13  California Consumers Legal Remedies Act ("CLRA"), to obtain injunctive
14  relief and attorneys' fees from Defendants.

15      103.   Defendants' acts and business practices constitute unlawful
16  methods of competition and unfair or deceptive acts within the meaning of
17  CLRA including but not limited to the following:

18          a.  Representing to Decedent, Decedent's physicians and the
19              general public that Androgel was safe, fit and effective for
20              all patients, knowing that said representations were false;
21          b.  Concealing from Decedent, Decedent's physicians and the
22              general public that Androgel had a serious propensity to
23              cause injuries, and even death, to users;
24          c.  Engaging in advertising programs designed to create the
25              image, impression and belief by consumers and physicians
26              that the use of Androgel was safe, and had fewer side
27              effects and adverse reactions than other options for
28              treating symptoms of low testosterone, even though the
29              Defendants knew these to be false, and/or had no
30              reasonable grounds to believe them to be true;
31          d.  Purposely downplaying and understating the health
32              hazards and risks associated with Androgel.

33      104.   Defendants' acts and business practices constitute unlawful
34  methods of competition and unfair or deceptive acts within the meaning of
35  CLRA. Plaintiff demands that Defendants immediately cease the illegal
36  conduct alleged herein.

37      105.   The illegal conduct alleged herein is continuing and there is

Complaint for Wrongful Death and Demand for Jury Trial

1   no indication that Defendants will refrain from such activity in the future.

2       106.   Pursuant to the CLRA, Plaintiff is entitled to injunctive relief

3   and attorneys' fees.

4   **Ninth Cause of Action**

5   **Violation of Business & Professions Code § 17200**

6       107.   Plaintiff incorporates by reference and realleges each

7   paragraph set forth above.

8       108.   Plaintiff brings this cause of action pursuant to California

9   Business & Professions Code § 17204.

10       109.   California Business & Professions Code § 17200 provides

11   that unfair competition shall mean and include "all unlawful, unfair or

12   fraudulent business practices and unfair, deceptive, untrue or misleading

13   advertising".

14       110.   The acts and practices described above were and are likely to

15   mislead the general public and therefore constitute unfair business practices

16   within the meaning of California Business & Professions Code § 17200.

17   The acts of untrue and misleading advertising set forth in preceding

18   paragraphs are incorporated by reference and are, by definition, violations

19   of California Business & Professions Code § 17200. This conduct includes,

20   but is not limited to:

21          a.  Representing to Decedent, Decedent's physicians, and the

22              general public that Androgel was safe, fit, and effective

23              for human consumption, knowing that said representations

24              were false, and concealing from the Decedent, Decedent's

25              physicians, and the general public that Androgel had a

26              serious propensity to cause injuries to users;

27          b.  Engaging in advertising programs designed to create the

28              image, impression and belief by consumers and physicians

29              that Androgel was safe for human consumption and would

30              not interfere with daily life, even though the Defendants

31              knew these to be false, and even though the Defendants

32               had no reasonable grounds to believe them to be true;

33          c.  Purposely downplaying and understating the health

34              hazards and risks associated with Androgel;

35           d.  Issuing promotional literature and commercials deceiving

36              potential users of Androgel by relaying positive

37              information, including testimonials from satisfied users,

17

1         and manipulating statistics to suggest widespread

2         acceptability, while downplaying the known adverse and

3         serious health effects and concealing material relevant

4         information regarding the safety of Androgel.

5     111.   These practices constitute unlawful, unfair and fraudulent

6  business acts or practices, within the meaning of California Business &

7  Professions Code § 17200.

8     112.   The unlawful, unfair and fraudulent business practices of

9  Defendants described above present a continuing threat to members of the

10  public in that Defendants continue to engage in the conduct described

11  therein.

12     113.   As a result of their conduct described above, Defendants have

13  been and will be unjustly enriched. Specifically, Defendants have been

14  unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten

15  gains from the sale and prescription of Androgel in California, sold in large

16  part as a result of the acts and omissions described herein.

17     114.   Because of fraudulent misrepresentations made by

18  Defendants as detailed above, and the inherently unfair practice of

19  committing a fraud against the public by intentionally misrepresenting and

20  concealing material information, the acts of Defendants described herein

21  constitute unfair or fraudulent business practices.

22     115.   Plaintiff, pursuant to California Business & Professions Code

23  § 17203, seeks an order of this court compelling the Defendants to provide

24  restitution and injunctive relief calling for Defendants, and each of them, to

25  cease unfair business practices in the future.

26                 **Tenth Cause of Action**

27                 **Loss of Consortium**

28     116.   Plaintiff incorporates by reference and realleges each

29  paragraph set forth above.

30     117.   As a direct and proximate result of Defendants' conduct,

31  Plaintiff has been deprived of love, society, companionship and services

32  and has otherwise suffered loss, the extent of which will be more fully

33  adduced at the trial of this matter.

34                 **Eleventh Cause of Action**

35                 **Wrongful Death**

36     118.   Plaintiff incorporates by reference and realleges each

37  paragraph set forth above.

Complaint for Wrongful Death and Demand for Jury Trial

119. As a direct and proximate result of Defendants' negligence, carelessness and/or recklessness Decedent was injured in such a way as to cause his premature death.

120. Furthermore, by reason of Decedent's death, Plaintiff has been permanently deprived of love, care, companionship, comfort, services, society, solace, affection, instruction, advice, training, guidance, protection, counsel, support, contributions, consortium, accumulations, inheritance and right of inheritance of Decedent, and has suffered grief and sorrow, all to her damage in an amount within the jurisdiction of this court, and according to proof.

## Twelfth Cause of Action
## Survival Action

121. Plaintiff incorporates by reference and realleges each paragraph set forth above.

122. Prior to his death, Decedent incurred substantial damages, and medical and/or hospital expenses as a direct and proximate result of the acts and/or omissions of the Defendants, and each of them, as herein alleged. The amount of those damages will be shown according to proof at the time of trial.

123. A cause of action for recovery of such damages by Decedent's successors in interest survives their death pursuant to California Code of Civil Procedure 377.

124. Defendants and each of them, acted in conscious disregard for the safety of Decedent with respect to matters alleged herein. Said disregard resulted in injuries and special damages, and warrants recovery of punitive damages by Decedent's successors in interest against Defendants.

## Prayer

Wherefore, Plaintiff prays for relief as follows:

1. For an injunction prohibiting Defendants from engaging in conduct which violates the California Consumers Legal Remedies Act;

2. For an injunction prohibiting Defendants from engaging in conduct which violates the California Business & Professions Code § 17200, et seq.;

3. Special damages according to proof;

4. General damages according to proof;

5. Medical expenses, past and future, according to proof;

6. Punitive damages;

19

Complaint for Wrongful Death and Demand for Jury Trial

1    7.    Pre- and post-judgment interest;

2    8.    Attorneys' fees, expenses, and costs; and

3    9.    Such further relief as this Court deems necessary, just, and

4    proper.

5    Dated:  July 2, 2014                Respectfully submitted,

6                                        Albertson & Davidson, LLP

7

8                               By: _____

9                                   Stewart R. Albertson, SBN 230841

10                                  3491 Concours, Suite 201

11                                  Ontario, California 91764

12                                  (909) 466-1711

13                                  (909) 354-3460 fax

14                                  stewart@aldavlaw.com

15                            **Demand for Jury Trial**

16       Plaintiff hereby demands a jury trial on all counts in this Complaint.

17   Dated:  July 2, 2014                Respectfully submitted,

18                                       Albertson & Davidson, LLP

19

20

21                              By: _____

22                                  Stewart R. Albertson, SBN 230841

23                                  3491 Concours, Suite 201

24                                  Ontario, California 91764

25                                  (909) 466-1711

26                                  (909) 354-3460 fax

27                                  stewart@aldavlaw.com

28

---

20

Complaint for Wrongful Death and Demand for Jury Trial

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| Evelyn Calvillo | AbbVie Inc., Abbott Laboratories, Inc., McKesson Corporation, and Does 1-100 |

| **(b)** County of Residence of First Listed Plaintiff   Orange County, CA | County of Residence of First Listed Defendant   Cook County, IL |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |

| **(c)** Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.<br>Albertson & Davidson, LLP<br>3491 Concours, Suite 201<br>Ontario, CA 91764<br>(909) 466-1771 | Attorneys (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.<br>WINSTON & STRAWN LLP<br>333 S. Grand Avenue, Los Angeles, CA 90071-1543<br>(213) 615-1700 |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☐ 1. Original Proceeding
- ☒ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ in excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332 (Diversity - Product Liability)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| **FOR OFFICE USE ONLY:** | Case Number:   **SACV14-01331 JLS (DFMx)** |
|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☒ Yes ☐ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☒ Orange | | Southern |
| | ☐ Riverside or San Bernardino | | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a **PLAINTIFF** in this action?<br><br>☐ Yes ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a **DEFENDANT** in this action?<br><br>☐ Yes ☒ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☒ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| ☒ Yes ☐ No | ☐ Yes ☐ No |
| If "yes," your case will initially be assigned to the | If "yes," your case will initially be assigned to the |
| SOUTHERN DIVISION. | EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | SOUTHERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes ☒ No |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _Drew A. Robertson /pn/_      DATE: 8-20-2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |